[No. 27040. Department One. June 8, 1938.]

POLSON LOGGING COMPANY, *Respondent*, v. E. PAT KELLY, *as Director of the Department of Labor and Industries, et al., Appellants.*[1]

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellants.

*L. B. Donley, Ballinger, Clark, Mathewson & Force,* and *Calhoun Shorts,* for respondent.

*Grosscup, Morrow & Ambler* and *George F. Yantis, amici curiae.*

[1]Reported in 80 P. (2d) 412.

SIMPSON, J.—This action was commenced to enjoin and prohibit the department of labor and industries from enforcing the provisions of chapter 212, Laws of 1937, p. 1031, Rem. Rev. Stat. (Sup.), § 7679-1 [P. C. § 3472-21], as against plaintiff.

The pertinent allegations of plaintiff's complaint are as follows: Plaintiff is engaged in the logging business, and in the prosecution of such business employs workmen in extrahazardous occupations in different risk classes; that, about June 1, 1937, the department of labor and industries, acting under and by virtue of chapter 212, Laws of 1937, issued a certain order which fixed and prescribed a rate or premium to be paid by the plaintiff, and by all other employers of workmen in extrahazardous occupations in the state of Washington, of one mill per man hour on all workmen engaged in extrahazardous occupations, and a rate or premium of one mill per man hour to be collected by each employer of workmen in extrahazardous occupations from each and every workman employed by such employer in such occupation, the money so paid and collected to be paid to the treasurer of the state of Washington and placed in a fund established by defendants to be known as occupational disease fund. That, in the course of their employment, plaintiff's workmen are not at any time exposed to any of the occupational diseases mentioned in chapter 212, or to conditions conducive to any of the occupational diseases. Plaintiff then asked the court to enjoin the defendants from requiring it to pay any sums whatever under or by virtue of chapter 212.

To this complaint, defendants interposed an answer admitting all formal allegations and raising by denials the question of the exposure of respondent's employees to the hazards of the occupational diseases enumerated in the act.

The trial was held to the court, and judgment entered enjoining the defendants from enforcing, as against plaintiff, the provisions of chapter 212, Laws of 1937. From that judgment, this appeal is taken.

The facts presented at the trial, as testified to by physicians of long experience in caring for injured workmen engaged in the logging industry, and practical loggers, who had a wide knowledge of logging operations in this state, may be summarized as follows: Respondent is engaged in the business of logging. It fells trees in the forest, cuts them to proper lengths, hauls them to its railroad, on which they are conveyed to some large body of water, and, after being dumped into the water, forms them into rafts for transportation. In these operations, respondent uses much machinery, consisting, in part, of donkey engines, caterpillar tractors, steam locomotives, and flat cars. In addition to the movable machinery, it maintains a logging railroad and the necessary shops to care for and repair all of its machinery and equipment. None of the occupational diseases named in the twenty-one subsections of the act are produced or caused by respondent's operations or by the logging operations of other logging companies in the state of Washington.

June 9, 1937, appellants, desiring to put into effect the provisions of chapter 212, *supra,* issued an order, or bulletin, addressed "To All Employers," which provided in part as follows:

"This is to notify you that because of the possibility of these Occupational Diseases being incurred in all types of employment, it will be necessary effective midnight, June 9, 1937, for you to pay into this Department each and every month two mills ($0.002) for every hour you have some one employed in duties subject to the Workmen's Compensation Act. (One mill

is to be collected by you from your employees and one mill to be paid by you as the employer.)

"This additional premium is to cover the costs to be incurred as a result of claims for compensation filed by employees who may sustain an Occupational Disease as defined by law. This premium is SEPARATE, DISTINCT AND IN ADDITION to the premiums that have to be paid for Industrial Insurance and Medical Aid.

"Therefore, when you submit your payroll reports (Commencing with the June, 1937, report, due in this Department on or before July 15, 1937) you will have to compute the amount of 'Occupational Disease' premium due on the total number of hours worked by your employees on the basis of two mills ($.002) per workman hour. Please show this 'Occupational Disease' premium computation separately on the regular Industrial Insurance payroll report as it must be separate from the computation for Industrial Insurance and Medical Aid premiums. It will not be necessary, however, to submit a separate check or remittance— the total premium due for Industrial Insurance, Medical Aid and Occupational Disease may be included in one check or remittance. This remittance should also include the premium you have collected from your employees as their share of this cost."

Appellants did not present any evidence in opposition to that introduced by respondent.

It is urged that the court committed error in holding that the logging operations, as conducted by respondents, do not produce any occupational diseases as defined by the statute.

█ In determining the meaning of the term "occupational disease," we have in mind our definition in *Seattle Can Co. v. Department of Labor & Industries*, 147 Wash. 303, 265 Pac. 739, in which Judge Tolman, speaking for the court, said:

"As we understand it, an occupational disease is one which is due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; that is, those things

which science and industry have not yet learned how to eliminate. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease."

From the foregoing definition, it is clear that, before any disease may be classified in a legal sense as an occupational disease, it must be a disease, or diseased condition, which is peculiar to a given occupation and brought about by exposure to certain harmful conditions which are constantly present, and to which all workmen in the occupation are continually exposed.

A condition of illness caused by a local or temporary condition in the plant of the employer, or a condition due to accidental injury, or a condition brought about by conditions to which all laborers, regardless of the nature of their occupation, are exposed, cannot be classed as an occupational disease.

It is readily apparent that there is no expressly declared intention, nor can it be inferred from the language of the act, that the legislature sought to exact a tax from workmen or from employers unless the operations in which they were engaged gave rise to occupational diseases.

The testimony of the physicians called as witnesses in this case shows that employees engaged in the logging industry were subject only to those diseases common to all employed people. To hold that compensation should be paid for such diseases, would change our industrial insurance act to one insuring against all diseases, instead of limiting it to those contracted because of the nature of the occupation.

Appellants contend that the workmen's compensation act lays down a definite procedure which must be followed before the court may assume juris-

diction, and cite in support thereof *State ex rel. Winningham v. Olinger,* 190 Wash. 697, 70 P. (2d) 317.

Since appellants' order, which sought to impose a tax upon respondent and its employees, is one relating to the inclusion of respondent within chapter 212, Laws of 1937, and which the department had no power to make under its terms, in so far as this respondent is concerned, it is not essential that the procedure provided for in Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469], and Rem. Rev. Stat., § 7697 [P. C. § 3488], be adhered to before appealing to the courts.

In *State v. Eyres Storage & Distributing Co.,* 115 Wash. 682, 198 Pac. 390, we said:

"The second assignment of error is without merit also. Had the commission made an order within the power granted by the amendment, assuming, without deciding, that such power could be granted, and no appeal had been taken from the order as provided in the amendment a different question would be presented from the one here wherein there is an attempted recovery upon an order the commission had no power to make. The order is void and may be asserted to be so at any time by any one who would wish to be free without it."

See, also, *State v. Bayles,* 121 Wash. 215, 209 Pac. 20, and 15 R. C. L. 841.

We are of the opinion that there are no occupational diseases named in this statute to which respondent's employees are or could be exposed on account of their occupation, and that chapter 212, Laws of 1937, is inapplicable to respondent's operations.

It is urged that the trial court held chapter 212, *supra,* unconstitutional. The trial court simply held this act could not be constitutionally applied to respondent, and with this holding we are in accord. The constitutionality of the act is not properly before the

court for consideration, and therefore we express no opinion concerning the same.

The judgment of the trial court is proper and is affirmed.

HOLCOMB, MAIN, BEALS, and GERAGHTY, JJ., concur.