[No. 30572. *En Banc.* January 31, 1949.]

SIMPSON LOGGING COMPANY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Respondents.*[1]

[1] Reported in 202 P. (2d) 448.

*Bogle, Bogle & Gates* and *Edw. S. Franklin,* for appellant.

*The Attorney General, Theodore M. Ryan* and *Phil H. Gallagher, Assistants,* for respondent Department of Labor and Industries.

*F. W. Loomis,* for respondent George Burtch.

MALLERY, J.—The department of labor and industries of the state of Washington allowed the claim of George Burtch for an award for an occupational disease by order dated April 10, 1946. The Simpson Logging Company, the employer of claimant, appealed from that order to the joint board upon two grounds: (a) that the claimant was not suffering from asthma (the disease claimed) and (b) that, in any event, asthma is not a compensable occupational disease under the workmen's compensation act of Washington.

By an order dated January 3, 1947, the joint board of the department sustained the action of the supervisor in awarding compensation. The employer, Simpson Logging Company, appealed from this order to the superior court of Grays Harbor county, Washington. The case was tried to the court, which affirmed the order of the joint board.

The employer, Simpson Logging Company, appeals from that judgment to this court and raises the same questions as presented to the joint board. Here those questions can be stated as: (1) Did the appellant overcome the statutory presumption as to the correctness of the facts found by the trial court affirming the joint board and the supervisor; and (2) Is a workman disabled by asthma which has arisen naturally and proximately out of his extrahazardous employment entitled to compensation under the provisions of Rem. Supp. 1941, §§ 7679-1, -2 [P.P.C. §§ 705-5, -7]?

The respondent Burtch entered the employ of the appellant, Simpson Logging Company, June 14, 1942. With the exception of two days, he worked every day that the plant operated. He alleged that he contracted asthma on or about February 1, 1946, caused by smoke in the plant. On or about December 11, 1945, he took the job of off-bearer on the taper machine. This was lighter than his previous work and is sometimes performed by women employees. The claimant was approximately sixty years of age, weighed between two hundred twenty-five and two hundred thirty-four pounds, and had never been sick before. Dust, smoke, and fumes prevailed at the location of the taper machine in the plant. For the first ten or twelve days as an off-bearer, he did not notice anything particularly wrong. After that, his first symptoms began to appear, when he began sneezing, his throat became sore, and his eyes burned. He coughed considerably, and his condition got continuously worse.

About two weeks before he quit, he went to see Dr. Lukins, a physician practicing in Elma, for treatment for his condition. The doctor treated him for asthma, which helped him some. When he had a coughing spell, he would go outdoors and smoke an Asthmadore cigarette and take a capsule, and would feel enough better to finish his shift.

On February 18, 1946, he had to quit work entirely and had been unable to resume his employment at the time he testified before the joint board on September 19, 1946. Prior to off-bearing on the taper machine, the claimant had never had any respiratory trouble.

Dr. Lukins was his attending physician. He took his history, diagnosed his trouble, treated him, and testified on his behalf. He related his symptoms as being that he could hardly get his breath, had pain on the left side of the chest, and also some soreness of the left arm, but nothing to speak of. He had taken a history of the conditions under which he was working and diagnosed his case as a cardiac asthma condition accompanied by a heart deficiency. He did not find any organic deficiency in the heart, although the symptoms of pain in the left side of the chest and left arm are

typical of heart disease. He did not make any laboratory allergy tests, but he thought the appearance of the symptoms complained of whenever the claimant was subjected to dust and smoke was itself a test. He was still of the opinion at the time of the hearing that the asthma condition was caused by the smoke and dust in the plant where the claimant had worked.

The appellant produced testimony to controvert the existence of smoke and dust in the plant as well as to controvert the medical testimony; but the supervisor, joint board, and court believed the testimony on behalf of the respondent.

▮ We answer the first question presented in the negative. The appellant has not overcome the presumption as to the correctness of the facts thus found by the joint board.

Appellant states its position upon its second question in this case as follows:

"Conceding, arguendo, that the testimony of Dr. Lukins was sufficiently definite to establish that the claimant was suffering from asthma, as the joint board apparently concluded, and conceding further that claimant developed his asthma because of employment conditions existing in appellant's plant, it then becomes necessary to determine whether the disease of asthma meets the requisites of a compensable occupational disease as heretofore defined by this court."

Appellant contends that asthma is an allergy or personal sensitivity to certain substances afflicting mankind in general. It is not peculiar to the plywood industry, and it attacks industrial and nonindustrial population alike and, therefore, cannot properly be classified as a compensable occupational disease. It takes the position that:

"The test of a compensable occupational disease applied by the Washington court is in accord with the almost unbroken line of decisions from other states holding that regardless of the statutory provisions of occupational disease legislation, an occupational disease is one contracted in the usual and ordinary course of events, which, from common experience, is known to be incident to a particular employment or which is normally peculiar to and gradually caused by an occupation, or which is due wholly to causes and con-

ditions which are normal and constantly present and characteristic of a particular occupation."

The respondent Burtch concedes that, if the definition of occupational disease as laid down in *Seattle Can Co. v. Department of Labor & Industries*, 147 Wash. 303, 265 Pac. 739 and *Polson Logging Co. v. Kelly*, 195 Wash. 167, 80 P. (2d) 412, is the correct definition as applied to the instant case, he cannot prevail.

At the time the decision in the *Seattle Can Co.* case was handed down, there was no statute in this state which provided for compensation for occupational diseases. At that time, only injuries of an accidental nature arising out of employment in an industry were compensable. The claimants in that case had become affected with what is known as benzol poisoning. The employer had built an addition to the room where the employees worked in such a way that the ventilating system had been rendered ineffective, and from the exposure to the fumes, the claimants had been poisoned. The question in the case was whether the disease was a result of an accident or was an occupational disease. The employer had defended upon the ground that claimants' disabilities were not caused by an accidental injury, since they were suffering from an occupational disease.

Thus, we see that the two classifications of disability were considered to be mutually exclusive, so that if it arose out of one it could not be due to the other. The court, in deciding that the claimants were entitled to recover, felt it was necessary to find that they were not suffering from an occupational disease, and it took the occasion to define an occupational disease as follows:

"As we understand it, an occupational disease is one which is due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; that is, those things which science and industry have not yet learned how to eliminate. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease. No such condition is shown here. No poisoning took place in this particular plant until the employer ignorantly or negligently shut off the ventilation.

None has occurred in like plants situated elsewhere. And when the trouble was located and corrected, no more poisoning took place in this plant. Hence we are forced to hold that the injuries have resulted from a fortuitous event."

A broad interpretation of the then existing statute providing for compensation for injuries in this situation called for a restricted definition of what constitutes an occupational disease. There was no statute defining what constituted an occupational disease, and the court considered it only as an eliminating factor incident to the process of defining an injury under the appropriate statute. Under our present statutes, the distinction becomes academic since both are compensable. The *Seattle Can Co.* case is therefore of no assistance to us in determining what the legislature meant by the language used in defining an occupational disease at a subsequent time.

In the later case of *Polson Logging Co. v. Kelly, supra,* the company sought to enjoin the collection of assessments under Laws of 1937, chapter 212, p. 1031, which provided for compensation for a specified list of occupational diseases upon the ground that none of the occupational diseases named in the twenty-one subsections of the act were caused by any logging operations in the state of Washington. The court agreed with that contention and said:

"It is readily apparent that there is no expressly declared intention, nor can it be inferred from the language of the act, that the legislature sought to exact a tax from workmen or from employers unless the operations in which they were engaged gave rise to occupational diseases."

The 1937 statute which enumerated the occupational diseases that were then compensable is an entirely different law from the present one, which does not name the compensable diseases. The law was again changed in 1941 by chapter 235 of the session laws which now reads as follows:

"Within the contemplation of this act, 'occupational disease' means such disease or infection as arises naturally and proximately out of extrahazardous employment."

This is the language with which we are here concerned, and the case at bar is a case of first instance because all of

our previous cases have considered the question of occupational disease either as defined by a dissimilar prior law or the case went off on the theory that the evidence was insufficient to establish the cause or the extent of the disability for which liability was asserted. Thus, in *Romeo v. Department of Labor & Industries*, 19 Wn. (2d) 289, 142 P. (2d) 392, the court said:

"(1) It is not necessary to determine whether the 1941 statute is applicable. Under either or both statutes (Laws of 1939, chapter 135, or Laws of 1941, chapter 235), the trial court should, as a matter of law, have affirmed the decision of the department, as there is an absence of substantial evidence to support a verdict that the disease or infection from which respondent suffers was contracted through the inhalation of dust in an industry where intense dust prevails or that his disease or infection arose naturally and proximately out of his employment."

And in the case of *St. Paul & Tacoma Lbr. Co. v. Department of Labor & Industries,* 19 Wn. (2d) 639, 144 P. (2d) 250, the court said:

"The finding of the joint board that the workman contracted an occupational disease of wood dust asthma from his employment resulting in his death is not sustained by the evidence. There is no evidence of probative value to remove the question of causal relation from the field of speculation and surmise."

In the case of *Rambeau v. Department of Labor & Industries,* 24 Wn. (2d) 44, 163 P. (2d) 133, the court said:

"The evidence produced in this case was, at best, conjectural and speculative and was not sufficient upon which to base a decision that the disease of which Rambeau died was caused by anything that happened to him at his place of employment. In other words, there was no substantial evidence produced at the hearing before the joint board to justify it in deciding for respondent."

Now that we find the evidence in the case at bar sufficient to sustain the respondent's claim of disability caused by dust and smoke encountered in his place of employment, we must for the first time decide if such a disease so caused can be held to be an occupational disease and compensable under the act.

Appellant urges us to follow the *Seattle Can Co.* case, *supra*. That case would read into the law the following tests of an occupational disease: (1) It is *peculiar* to a given occupation; (2) it is caused by exposure to harmful conditions which are *constantly* present; and (3) all the workmen in a given industry must be exposed to them. It would not be an occupational disease if caused by: (1) a local condition; (2) a temporary condition; (3) an accidental injury; or (4) by conditions to which all laborers are always exposed.

The intent of the legislature must be drawn from the language used in the present statute. Decisions interpreting dissimilar statutes or the common law can be of little assistance to us. There is nothing in the language of the present statute, defining occupational disease as " 'occupational disease' means such disease or infection as arises naturally and proximately out of extrahazardous employment," that would warrant reading into it the tests of the *Seattle Can Co.* case. The legislature is presumed to have been familiar with the meaning of "proximate cause" as used by the courts, and that being so, when they defined as an occupational disease those diseases or infections as arise naturally and *proximately* out of extrahazardous employment, it would follow that they meant that the condition of the extrahazardous employment must be the proximate cause of the disease for which claim for compensation is made, and that the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the disease, so that the disease would not have been contracted but for the condition existing in the extrahazardous employment.

Under the present act, no disease can be held not to be an occupational disease as a matter of law, where it has been proved that the conditions of the extrahazardous employment in which the claimant was employed naturally and proximately produced the disease, and that but for the exposure to such conditions the disease would not have been contracted.

480

Those are the facts as found below. The record supports them.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, SCHWELLENBACH, HILL, and GRADY, JJ., concur.

SIMPSON and ROBINSON, JJ., concur in the result.