[No. 5645-3-II. Division Two. June 20, 1983.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent,*
v. KATHLEEN KINVILLE, *Appellant.*

*H. Frank Stubbs,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Carol Molchoir* and *Thomas Chapman, Assistants,* for respondent.

REED, J.—Claimant Kathleen Kinville appeals from a Superior Court order reversing the Board of Industrial Insurance Appeals' allowance of her occupational disease claim for a psychiatric condition. The crucial issue on appeal is whether claimant's psychiatric condition constitutes a compensable occupational disease under the Washington Industrial Insurance Act. RCW 51.08.140. We hold that claimant's condition fails to qualify as an occupational disease because it did not arise naturally and proximately out of claimant's employment. Accordingly, we affirm the

holding of the trial court.

Claimant commenced employment with the Pierce County Board of Equalization in June 1976. In November 1976 she began to suffer emotional and psychiatric symptoms due to anxiety about her employment situation. This anxiety grew out of her disappointed expectation of receiving training and placement in a special position, her belief that her supervisor was hostile, her eventual transfer to a boring job in an isolated and spartan environment, her belief that her new supervisor was an alcoholic, and a fear of losing even this distasteful position.

In December 1976, claimant's emotional problems progressed to the point where she began to suffer hallucinations and lost touch with reality. She was placed under the care of Dr. Krishnamoorti and diagnosed as suffering from schizophrenia.[1] On March 8, 1977, claimant filed an occupational disease claim with the Department of Labor and Industries (Department). This claim was rejected by the Department on March 16, 1977. Claimant then appealed to the Board of Industrial Insurance Appeals (Board). Hearings were held before a hearing examiner for the Board in February and April of 1978. At these hearings claimant presented medical testimony indicating that, although she had a predisposition for emotional illness, her present breakdown was directly attributable to stress resulting from her frustration with her employment situation. The Department did not present any medical evidence. It did, however, present testimony by four of the claimant's former co-workers who stated that their employment with Pierce County was not excessively stressful and did not involve unreasonable demands or harassments.

On May 8, 1978, the hearing examiner entered a pro-

---

[1]Claimant exhibited schizophrenic symptoms for some time preceding her present employment. She suffered from a lack of self-worth and was concerned with her weight, lack of male friends, her relationship with her parents, and was envious of a sister who had recently married. Her physician described her as a "schizoid pre-morbid personality," an individual having difficulty "adjusting to adult life."

posed decision and order reversing the Department's rejection of Ms. Kinville's claim. The hearing examiner made the following findings:

1. . . . Prior to entering said employment, claimant had some predisposition to a neurosis or neuroses, but was functioning adequately in her occupational and personal life.

2. During the course of claimant's said employment, she was subject to certain pressures and changes of position, the disappointment of her hopes for training and placement in a special position, apparent hostility in her supervisor, arising out of her attempts to inquire as to her status, transfer to a distasteful, boring job in virtual isolation with Spartan surroundings, being nominally secretary for a man who was seldom in, and whose absences she felt she had to make excuses for. Said pressures and changes caused claimant to contract a psychological condition, evidenced, in part, by hallucinations, morbid fears, and depression, which psychological condition caused claimant to lose time from work, and necessarily to seek psychiatric care and attention, starting December, 1976.

The Department's challenge to the hearing examiner's proposed decision was denied by the full Board on June 21, 1978.

Thereafter, the Department appealed to the Pierce County Superior Court.[2] After a hearing, the court held that the facts found by the hearing examiner did not, as a matter of law, support his conclusion that claimant's psychiatric condition was a compensable occupational disease. Consequently, the court reversed the decision of the Board and reinstated the Department's rejection of Ms. Kinville's claim. The sole issue on appeal concerns the propriety of the trial court's legal conclusion that claimant's psychiatric condition failed to qualify as an occupational disease.

---

[2]RCW 51.52.110 governs an appeal by the Department and reads as follows: "*Provided, however,* That whenever the board has made any decision and order reversing an order of the supervisor of industrial insurance on *questions of law* or mandatory administrative actions of the director, the department shall have the right of appeal to the superior court." (Italics ours.)

RCW 51.08.140 defines occupational disease as a disease or infection which arises naturally and proximately out of employment. The Department concedes claimant's employment was a cause in fact of her condition but vigorously denies that her illness and disability arose naturally and proximately out of her employment, as that phrase is used in the statute. Claimant basically takes the position that any condition which is caused by any aspect of employment qualifies as a compensable occupational disease under the statute. The Department, on the other hand, argues that in order for a condition to qualify as an occupational disease there must be a greater risk of contracting the disease in that particular occupation than in other types of employment or nonemployment situations.

In evaluating this issue we have looked to prior Washington decisions which have addressed the question of whether a particular disease satisfies the statutory requirements presently contained in RCW 51.08.140 (*i.e.,* the requirement that the disease arise naturally and proximately out of a claimant's employment).[3] Several early decisions held that in order to satisfy the statutory requirements a disease had to be peculiar to a given occupation and brought about by exposure to certain harmful conditions that were constantly present and to which all workers in the occupation were continually exposed. *St. Paul & Tacoma Lumber Co. v. Department of Labor & Indus.,* 19 Wn.2d 639, 144 P.2d 250 (1943); *Romeo v. Department of Labor & Indus.,* 19 Wn.2d 289, 142 P.2d 392 (1943). Importantly, the "peculiar to the occupation" requirement espoused in these decisions was not based on a judicial construction of the "naturally and proximately"

---

[3]Prior to 1959 the occupational disease statute defined occupational disease as "such disease or infection as arises naturally and proximately out of extra–hazardous employment." Laws of 1941, ch. 235, § 1. In that year the statutory definition was amended by striking the word "extrahazardous" and adding "under the mandatory or elective adoption provisions of this title", making the definition read as it now appears in RCW 51.08.140. These changes in the statute are not relevant to the issues discussed in the present opinion.

terminology contained in the then existing occupational disease statute. Instead, it was based exclusively on a line of cases decided before enactment of the original occupational disease act in this state. *E.g., Seattle Can Co. v. Department of Labor & Indus.*, 147 Wash. 303, 265 P. 739 (1928). *See St. Paul & Tacoma Lumber Co.*, 19 Wn.2d at 645; *Romeo*, 19 Wn.2d at 292.

The "peculiar to the occupation" requirement was rejected in *Simpson Logging Co. v. Department of Labor & Indus.*, 32 Wn.2d 472, 202 P.2d 448 (1949), where the court was confronted with an occupational disease claim by a claimant with an asthmatic condition resulting from his exposure to dust and smoke at the lumber mill where he was employed. After reviewing the terminology of the occupational disease statute the court held:

> There is nothing in the language of the present statute, defining occupational disease as "'occupational disease' means such disease or infection as arises naturally and proximately out of extrahazardous employment," that would warrant reading into it the tests of the *Seattle Can Co.* case. . . .
>
> Under the present act, no disease can be held not to be an occupational disease as a matter of law, where it has been proved that the *conditions* of the extrahazardous employment in which the claimant was employed naturally and proximately produced the disease, and that but for the exposure to such conditions the disease would not have been contracted.

(Italics ours.) *Simpson Logging Co.*, 32 Wn.2d at 479. On the basis of this analysis the court concluded that the claimant's asthmatic condition constituted an occupational disease despite the fact that neither asthma nor the conditions producing the disease (*i.e.*, smoke and dust) are peculiar to lumber mills. *Simpson Logging Co.*, 32 Wn.2d at 479–80.

The Supreme Court most recently examined the occupational disease statute in *Favor v. Department of Labor & Indus.*, 53 Wn.2d 698, 336 P.2d 382 (1959). In *Favor*, the claimant sought compensation for a coronary occlusion

allegedly resulting from strain and anxiety associated with his job as an agricultural inspector. The court affirmed the Board's denial of the claim on the ground that the claimant's statements regarding the strain and anxiety connected with his job were the only evidence supporting the existence of a causal relationship between his disease and his employment. The court held that the occupational disease statute requires objective proof that a worker's disease arose naturally and proximately out of his employment, and that the claimant's statements as to purely subjective conditions, peculiar to himself, did not satisfy this standard. *Favor,* 53 Wn.2d at 703–04. However, after citing the language we have quoted from *Simpson,* the *Favor* court went on to address the proximate cause issue. In holding that Mr. Favor's condition did not arise naturally and proximately from his employment the court said:

> It seems obvious that, if men in all employments suffer the same disease as that of the claimant, it does not meet the proximate cause requirement of the statute; nor does the fact that the claimant worried about his work distinguish the case. Persons in all employments, and in all activities are exposed to the emotional stress and strain of anxiety and worry, and it cannot be said to have arisen naturally and proximately from the claimant's employment.

*Favor,* 53 Wn.2d at 706.

We are unable to reconcile *Simpson* and *Favor.* We believe that *Favor, sub silentio,* overruled *Simpson's* rejection of the peculiar to the occupation requirement for an occupational disease. In our view, *Favor's* language is but another way of phrasing that requirement. Consequently, and because no prior decision has concentrated on the entire phrase "as arises naturally and proximately", we believe we now should do so.

We note initially the fundamental rule of statutory construction that a legislative enactment must be construed so as to give effect to every word contained therein. *See In re Marriage of Timmons,* 94 Wn.2d 594, 617 P.2d 1032 (1980). Therefore, the "naturally" requirement in RCW

51.08.140 must be interpreted as referring to something more than mere proximate or legal causation, *i.e.,* the "but for" test of *Simpson.*

■■ The term "naturally" is not defined in RCW 51.08 and must be accorded its usual and ordinary meaning. *See Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979). In its everyday usage the word "naturally" connotes an *innate* or *inherent* character or tendency. *See Webster's New World Dictionary of the American Language* (2d College ed. 1974); *Webster's Third New International Dictionary* (1968). Therefore, the requirement in RCW 51.08.140 that a disease arise "naturally and proximately" out of a claimant's employment reasonably can be construed as limiting compensation to diseases which are inherent in a claimant's particular occupation. This interpretation of the statute is entirely consistent with the legislative history of the occupational disease act.[4] It is also consistent with the well established principle that the Industrial Insurance Act is not intended to provide workers with general health and accident insurance at the expense of the industry in which they are employed. *See Favor,* 53 Wn.2d at 703.

We adopt the foregoing construction of the "naturally and proximately" element of RCW 51.08.140 and hold that the worker has the burden of establishing that the conditions producing his disease are peculiar to, or inherent in, his particular occupation.[5] In this regard, we do not believe

---

[4]Before adoption of the "naturally and proximately" terminology, the occupational disease statute provided compensation for specifically enumerated diseases. Laws of 1937, ch. 212, § 1. Each of these enumerated diseases was peculiar to or inherent in a specific type of employment covered by the act. *Favor.* It is reasonable to assume that this "peculiar to the occupation" concept is embodied in the "naturally" requirement of the present statute.

[5]Our recognition of the validity of the equivalent of the "peculiar to the occupation" standard for purposes of determining whether a disease arose naturally out of a claimant's employment is not necessarily inconsistent with the *Simpson* court's rejection of the standard. As noted previously, the *Simpson* court was concerned with the requirement that a disease arise proximately out of the employment. Consequently, the court's rejection of the "peculiar to the occupa-

the Legislature intended to limit compensation to situations where the claimant is able to demonstrate that his disease is *unique* to his particular type of employment. Instead, we believe the statute requires a showing by the claimant that the job requirements of his particular occupation exposed him to a greater risk of contracting the disease than would other types of employment or nonemployment life.[6] *See Goldberg v. 954 Marcy Corp.*, 276 N.Y. 313, 12 N.E.2d 311 (1938); *see generally* 1B A. Larson, *Workmen's Compensation* § 41.32 (1952). As stated in *Harman v. Republic Aviation Corp.*, 298 N.Y. 285, 288, 82 N.E.2d 785 (1948):

> An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one "which results from the nature of the employment, and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general."

In view of the foregoing analysis, the present claimant is not entitled to compensation under RCW 51.08.140 unless her mental disease arose naturally and proximately out of

tion" test related solely to the validity of that standard as a means of determining proximate causation.

[6]For example, a pipe fitter developing tinnitus as a proximate result of his exposure to excessive noise at the shipyard where he works likely would have no trouble establishing that his disease arose naturally out of his employment. Although tinnitus is not unique to shipyard workers, it is obvious that, due to the constant and extreme noise levels associated with the occupation they are exposed to a greater risk of contracting the disease than persons in other types of employment.

her employment with Pierce County. Her disease can be held to have arisen naturally out of her employment only if her job environment exposed her to a greater risk of developing the mental condition than employment generally or nonemployment life. Satisfaction of this standard requires a showing by the claimant that her employment involved greater stress and tension than the day–to–day mental stress common to all occupations. *See Favor,* 53 Wn.2d at 706.[7] Unfortunately for the claimant, the evidence in the instant case fails to demonstrate that her working conditions involved any out–of–the–ordinary work stress. Accordingly, the trial court's rejection of her occupational disease claim was appropriate.

For the stated reasons, we affirm.

PETRICH, C.J., and WORSWICK, J., concur.

---

[7]Our analysis in this regard accords with the generally recognized rule that compensation for a mental disease or injury caused by gradual mental stimuli in the job environment is appropriate only where the evidence establishes that the objective conditions of employment involve significantly more tension than the day–to–day mental stress that all employees experience. *See generally* 1B A. Larson, *Workmen's Compensation* § 42.23 (Supp. 1982).