[No. 6932-6-II.   Division Two.   May 7, 1985.]

RAYMOND L. SNYDER, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Verlaine Keith–Miller, Assistant,* for appellant State.

*Don Taylor,* for appellant Pacific Powder.

*Jack W. Hanemann, Jr.,* for respondent.

PETRICH, J.—Pacific Powder, Pipe and Supply (Pacific) and the Department of Labor and Industries[1] (hereinafter collectively referred to as appellants) appeal from a superior court judgment upon a jury verdict. The verdict reversed an earlier denial by the Board of Industrial Insurance Appeals of Raymond L. Snyder's claim that he sustained an occupational disease[2] in the course of his employment with Pacific. The primary issue on appeal is whether aggravation of a preexisting occupational disease is compensable as an occupational disease under the Industrial Insurance Act, Title 51, Revised Code of Washington. We affirm.

Snyder began employment with Pacific in 1979. His work

---

[1]Although the Department is technically a respondent, it proceeds as an appellant by adopting Pacific's position on the primary issue.

[2]While determining that Snyder had, during his employment, sustained temporary welder's bronchitis and a vocal chord polyp which had healed completely, the Board concurred in the Department's decision that he had not sustained an occupational disease.

history prior to his employment at Pacific includes considerable employment outside the state of Washington involving welding, grinding, and sandblasting. Snyder had worked with asbestos and was exposed to silicon dust. At Pacific he was employed as a lead welder in its welding shop. This employment frequently exposed him to fumes containing zinc while he was welding seams on large sections of galvanized pipe. The work site did not have an adequate forced–air ventilation system.

After working several months in Pacific's welding shop, Snyder began to develop increased and spasmodic coughing, shortness of breath, early fatigue, and sputum. Before Snyder began working for Pacific in 1979, he had not manifested any symptoms of ill health. Snyder presented seven witnesses to establish that he had appeared to be in good health before commencing employment at Pacific, and that the development of his physical ailments occurred after he had worked for several months at Pacific. There was testimony to the effect that before his employment at Pacific, Snyder was "physically fit, always active and always on the go." These witnesses included a Dr. Ruhl, a board certified specialist in pulmonary diseases, who examined Snyder on several occasions between November 29, 1979 and June 11, 1981. Dr. Ruhl testified that Snyder was suffering from interstitial pulmonary fibrosis (silicosis), welder's bronchitis, cigarette bronchitis, and a vocal polyp, which was surgically removed. Dr. Ruhl testified that Snyder had probably contracted the silicosis before his employment with Pacific, but was asymptomatic at the time he began working there. Dr. Ruhl testified that in his opinion the conditions to which Snyder was exposed while working at Pacific (*i.e.*, welder's fumes and dust) aggravated the pre-existing silicosis.

Somewhat conflicting testimony was given by a Dr. Hudson, who examined Snyder at Pacific's request. Dr. Hudson diagnosed Snyder as suffering from mild asthma, mild silicosis, and metal fume fever, which had completely cleared up by the time of Dr. Hudson's examination. Dr. Hudson

testified that in his opinion Snyder's silicosis was related to Snyder's occupation before his job with Pacific. In Dr. Hudson's opinion, Snyder's silicosis did not render him disabled or unemployable.

On appeal, appellants contend that aggravation of a preexisting occupational disease is not compensable as an occupational disease under the Industrial Insurance Act as a matter of law. An occupational disease is defined in the act as follows:

> "Occupational disease" means such disease or infection as *arises naturally and proximately* out of employment under the mandatory or elective adoption provisions of this title.

(Italics ours.) RCW 51.08.140. Because Snyder's preexisting silicosis was admittedly contracted before his employment at Pacific, appellants argue that his silicosis cannot be deemed to have "arisen naturally and proximately" from his employment at Pacific, even if the employment conditions at Pacific did aggravate the silicosis and cause it to become both symptomatic and disabling for the first time.

Thus, under the reasoning urged by appellants, a disease which becomes aggravated by a person's employment conditions is not compensable as an occupational disease pursuant to RCW 51.08.140 because a disease aggravated by employment is not a disease that "arises naturally" from that employment. Appellants contend that our recent decision in *Department of Labor & Indus. v. Kinville,* 35 Wn. App. 80, 664 P.2d 1311 (1983) compels such a result. We disagree. In *Kinville,* we merely stated that the "arises naturally" requirement of RCW 51.08.140 refers to more than proximate or legal causation. Because the term "naturally" is not defined in RCW 51.08, we accorded the term its usual and ordinary meaning of "innate" or "inherent," and held that a worker seeking compensation for an occupational disease has "the burden of establishing that the conditions producing his disease are peculiar to, or inherent in, his particular occupation." *Kinville,* 35 Wn. App. at 87. *Kinville* did not address the issue whether aggravation of a

preexisting, nonsymptomatic disease is compensable under RCW 51.08.140 as an occupational disease.

However, the Washington Supreme Court has held previously that aggravation of a preexisting disease may be compensable as an occupational disease. *Kallos v. Department of Labor & Indus.*, 46 Wn.2d 26, 278 P.2d 393 (1955). *Kallos* is factually on point with the present case. In *Kallos,* a worker contracted silicosis while working outside the state of Washington and prior to his employment in Washington. The worker's silicosis was asymptomatic at the time he commenced employment in Washington, which employment caused him to be exposed to considerable smoke and dust. Shortly thereafter, the worker began to exhibit the symptoms of silicosis (*e.g.,* shortness of breath, heavy coughing, and early fatigue). The Department contended in *Kallos,* as it does here, that in order to show entitlement under the occupational disease statute, the claimant "must produce testimony that his disease had its *inception* in his [current or last] extrahazardous employment, and that a mere showing of aggravation of a pre–existing disease due to the conditions of employment is not sufficient." (Italics ours.) *Kallos,* 46 Wn.2d at 29. The court rejected such a narrow interpretation of the statute, saying:

> In the instant case, the injury is "such physical condition as results from" a previous nondisabling occupational disease. The proof of the cause of its change from a nondisabling status to a disabling status must satisfy the requirements laid down in *Simpson Logging Co. v. Department of Labor & Industries,* 32 Wn. (2d) 472, 202 P. (2d) 448. The rule of that case may be thus paraphrased to fit the instant case. The condition of the extrahazardous employment must be the proximate cause of the change in the status of the occupational disease for which claim for compensation is made, and the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the change, so that the change would not have occurred but for the condition existing in the extrahazardous employment.

*Kallos,* 46 Wn.2d at 29.

Appellants assert that *Kallos* has no precedential value because (1) the statute interpreted by the *Kallos* court was improperly codified, and (2) the statute that should have been interpreted by the *Kallos* court has since been amended. The improperly codified statute considered by the *Kallos* court read as follows:

"'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without; *an occupational disease; and such physical condition as results from either.*"

*Kallos*, 46 Wn.2d at 29. However, the statute actually in existence at that time and which should have been considered by the *Kallos* court read as follows:

"occupational disease" means such disease or infection as arises naturally and proximately out of extra–hazardous employment.

Laws of 1941, ch. 235, § 1, p. 772. As conceded by Pacific, this is essentially the same statute as the current statute, RCW 51.08.140, except that in 1961 the Legislature substituted the words "employment under the mandatory or elective adoption provisions of this title" for the words "extra–hazardous employment." The use of the improperly codified statute was brought to the attention of the *Kallos* court by a petition for a rehearing, which the court denied. *See Digest of Washington Cases on Workmen's Compensation Law*, Comment at 161 (1970). Thus, the *Kallos* court indirectly rejected the argument that aggravation of a preexisting disease by a worker's current employment conditions is not a disease that "arises naturally" from that employment.

Even were we not to consider *Kallos* as precedent, the overwhelming weight of authority from other jurisdictions holds that aggravation of a preexisting occupational disease is compensable as an occupational disease so long as the coverage is limited to diseases that are peculiar to the type of employment involved and the worker is exposed to hazards greater than those involved in ordinary living. This

"peculiar to" limitation is precisely our holding in *Department of Labor & Indus. v. Kinville, supra.* In construing the meaning of the term "arises naturally" in *Kinville,* we relied upon the following interpretation by the Court of Appeals of New York of that state's occupational disease statute, which is worded similarly to RCW 51.08.140.

> An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as *natural to, inhering in,* an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg v. 954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one "which results from the *nature of the employment,* and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a *natural incident* of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general."

(Italics ours.) *Kinville,* 35 Wn. App. at 88, quoting *Harman v. Republic Aviation Corp.,* 298 N.Y. 285, 288, 82 N.E.2d 785 (1948).

Under the test of "natural to" or "inhering in," the New York courts have allowed compensation for aggravation of a disease by current employment conditions where the pre-existing disease was not disabling.

> For many years there was some confusion over the question of the compensability for an occupational disease where the particular claimant suffered from a pre-existing condition which was described as having been aggravated by his employment. In two recent cases, we have clarified the circumstances in which the existence of or susceptibility to a pre-existing condition which is in some way exacerbated by one's employment is not a disqualification from compensability for occupational disease. In *Matter of Strouse v Village of Endicott,* (50 AD2d 635), we established the distinction that compen-

sation is not payable for the aggravation of a previously active condition, but where an employee "suffers" from a condition which is dormant and not disabling, and the distinctive feature of the employment causes disability as a result of the activation of that condition, compensation for occupational disease is payable. In *Matter of Lopez v Hercules Corrugated Box Corp.*, (50 AD2d 1048), we reaffirmed the rule of *Strouse* so as to allow compensation where an asymptomatic underlying condition is aggravated *so as to become symptomatic by the employment. The ultimate test is not the initiation or precipitation of the disease itself, but whether the employment acts upon that disease or condition in such a manner as to cause a disability which did not previously exist.*

(Citations omitted. Italics ours.) *Perez v. Pearl–Wick Corp.*, 56 A.D.2d 239, 241, 392 N.Y.S.2d 496, 497–98 (1977).

The Federal Longshoremen's and Harbor Worker's Compensation Act also employs a definition of occupational disease similar to RCW 51.08.140. This act states, "occupational disease or infection as *arises naturally* out of such employment . . ." 33 U.S.C. § 902(2). In construing this statute to hold compensable as an occupational disease a disability resulting from a preexisting, asymptomatic disease aggravated by current employment conditions, Judge Learned Hand reasoned:

I can see no difference between a fresh infection and the awakening of an old one. The statute is not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies: an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs. . . .

*Grain Handling Co. v. Sweeney*, 102 F.2d 464, 466 (2d Cir. 1939).

Finally, while statutory definitions of occupational disease differ, the majority of courts have allowed compensation for a disability caused by aggravation of a preexisting,

asymptomatic disease by conditions peculiar to the worker's employment.[3]

■■ The foregoing reasoning and authority is echoed by Washington cases which recognize compensability for a preexisting, asymptomatic injury aggravated during employment.

> As we have many times stated, the provisions of the workmen's compensation act are not limited in their benefits to such persons only as approximate physical perfection, for few, if any, workmen are completely free from latent infirmities originating either in disease or in some congenital abnormality. It is a fundamental principle which most, if not all, courts accept, that, if the accident or injury complained of is the proximate cause of the disability for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability independent of any preexisting or congenital weakness; the theory upon which that principle is founded is that the workman's prior physical condition is not deemed the cause of the injury, but merely a condition upon which the real cause operated.

---

[3]Those states holding as compensable a preexisting silicosis asymptomatic at time of commencement of employment with the employer, but aggravated during employment due to conditions peculiar to that occupation are: *Pacific Employers Ins. Co. v. Insurance Accident Comm'n,* 219 Cal. App. 2d 634, 33 Cal. Rptr. 442 (1963); *Blue Diamond Coal Co. v. Napier,* 337 S.W.2d 879 (Ky. Ct. App. 1960); *Willingham v. Bryan Rock & Sand Co.,* 240 N.C. 281, 82 S.E.2d 68 (1954); *Leva v. Caron Granite Co.,* 84 R.I. 360, 124 A.2d 534 (1956); *Asarco, Inc. v. Raley,* 603 S.W.2d 113 (Tenn. 1980); *Pocahontas Fuel Co. v. Godbey,* 192 Va. 845, 66 S.E.2d 859 (1951).

Those states holding as compensable a preexisting latent or quiescent disease aggravated during employment due to conditions peculiar to that occupation are: *Mead v. American Smelting & Ref. Co.,* 90 Ariz. 32, 363 P.2d 930 (1961); *Zallea Bros. v. Cooper,* 53 Del. 168, 166 A.2d 723 (1960); *Walker v. McDonnell Aircraft Corp.,* 231 So. 2d 210 (Fla. 1970); *Weimer v. Sauder Tank Co.,* 184 Kan. 422, 337 P.2d 672 (1959); *Clarici's Case,* 340 Mass. 495, 164 N.E.2d 897 (1960); *Riddle v. Broad Crane Eng'g Co.,* 53 Mich. App. 257, 218 N.W.2d 845 (1974); *Yaeger v. Delano Granite Works,* 236 Minn. 128, 52 N.W.2d 116 (1952); *Kroger Co. v. Orr,* 230 So. 2d 798 (Miss. 1970); *Reynolds v. GMC,* 40 N.J. Super. 484, 123 A.2d 555 (1956); *National Zinc Co. v. Hainline,* 360 P.2d 236 (Okla. 1961); *Holden v. Willamette Indus., Inc.,* 28 Or. App. 613, 560 P.2d 298 (1977); *Aetna Cas. & Sur. Co. v. Luker,* 511 S.W.2d 587 (Tex. Civ. App. 1974); *Charlton v. State Workmen's Comp. Comm'r,* 236 S.E.2d 241 (W. Va. 1977).

*Miller v. Department of Labor & Indus.*, 200 Wash. 674, 682–83, 94 P.2d 764 (1939); *see also Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981); *Kallos*, 46 Wn.2d at 29–30. Cases subsequent to *Miller* have made it clear that the Legislature did not intend to compensate only those disabled workers who previously were in perfect health. *See, e.g., Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 683–84, 571 P.2d 229 (1977). Although the claimant is required to prove his claim by competent evidence, the Industrial Insurance Act is remedial in nature and its beneficial purposes should be liberally construed in favor of the workman. RCW 51.04.010; *Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 413 P.2d 814 (1966); *Wendt*, 18 Wn. App. at 680. In light of the foregoing authority, we hold that aggravation of a preexisting, asymptomatic disease may be compensable as an occupational disease within the meaning of RCW 51.08.140, provided that the employment conditions producing the aggravation are peculiar to, or inherent in, the particular occupation. *See Kinville*, 35 Wn. App. at 87.

Pacific contends next that there is insufficient evidence of Snyder's silicosis having been aggravated or having become disabling from his employment at Pacific. We disagree.

■ Because Snyder prevailed before the jury, we must view the evidence in the light most favorable to him, and the jury's verdict should not be disturbed if there is substantial evidence to support it. *Bennett v. Department of Labor & Indus.*, 95 Wn.2d at 534. Here, the jury's verdict is amply supported in the record by witnesses who testified to Snyder's apparent good health prior to his employment at Pacific, and by the testimony of Snyder's attending physician, Dr. Ruhl. Dr. Ruhl testified as follows:

Q. Again, restating it another way, in your opinion, what was the effect on Mr. Snyder of his employment at Pacific Pipe and Powder on a more–likely–than–not basis?

A. I believe it aggravated his pre–existing lung disease. I believe the silicosis was evolving at that period of time

of his employment there following dust exposure several years earlier and that the employment at Pacific Pipe had an aggravating effect on his pulmonary silicosis . . . Although conflicting evidence was also presented, including testimony by Dr. Ruhl himself, such conflicts are for the jury to resolve. Upon this evidence, the jury was justified in finding that Snyder's preexisting, asymptomatic silicosis was aggravated and became disabling due to the employment conditions at Pacific.

Finally, Pacific contends the court erred by refusing to give proposed instruction 11, which reads as follows:

> Medical testimony must establish causal relationship between an industrial injury and the alleged disability in terms of probability; medical testimony in the terms of possibility, could cause or can cause is not sufficient.

■ Pacific contends the giving of this instruction is supported by certain cases. *See, e.g., Jackson v. Department of Labor & Indus.*, 54 Wn.2d 643, 343 P.2d 1033 (1959). However, Pacific offers no argument as to why the court's failure to give this instruction constitutes prejudicial or reversible error. We will not consider an assignment of error which is unsupported by facts and argument in an appellant's brief, unless it appears to be meritorious on its face. RAP 10.3(a)(5); *Lutz v. Longview*, 83 Wn.2d 566, 520 P.2d 1374 (1974). An assignment of error not supported by argument is deemed abandoned. *Lassila v. Wenatchee*, 89 Wn.2d 804, 576 P.2d 54 (1978). We do not find this assignment of error to be meritorious on its face.

Judgment affirmed.

REED, J., concurs.

WORSWICK, C.J. (concurring in the result)—I am not convinced that the result follows from the language of the statute, or that *Department of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983) can be so easily distinguished. However, I am satisfied that *Kallos v. Department of Labor & Indus.*, 46 Wn.2d 26, 278 P.2d 393 (1955)

is indistinguishable and is controlling. Whether *Kallos* is right or wrong, it is understandable in the context of this arcane area of law in which the wish, not the statute, is frequently the father of the decision. I concur in the result.