[No. 9870-9-II.   Division Two.   August 17, 1989.]

THE CITY OF BREMERTON, *Appellant,* v. CAROLE
SHREEVE, *Respondent.*

*Elizabeth K. Reeve* and *Schwabe, Williamson, Wyatt, Moore & Roberts,* for appellant.

*Richard P. Blumberg* and *Webster, Mrak & Blumberg,* for respondent.

REED, J.—The City of Bremerton appeals from a judgment of the Kitsap County Superior Court, affirming a decision of the Board of Industrial Insurance Appeals (BIIA) that upheld Carole Shreeve's claim that her kidney infection was a disabling occupational disease arising naturally and proximately out of her employment as confidential secretary to the Mayor of Bremerton. We affirm.

In December 1981, after 10 years with another city department, Carole Shreeve began working as the confidential secretary to the Mayor of Bremerton. During the first month of her tenure, Shreeve served Mayor Glenn Jarstad; she subsequently worked under Mayor Eugene Nelson when he began his term in January of 1982.

The Mayor's office was busy, receiving 20 to 25 phone calls per hour, and got busier when Nelson took office. Early in his term, Nelson directed Shreeve not to leave her desk unattended, and to get someone from the Planning Department upstairs to mind the phones and greet the public if she needed a break. When she asked if this policy applied to short trips to the bathroom, the Mayor indicated that it did, and reinforced his position by severely criticizing Shreeve on those occasions when she had to relieve herself despite the refusal of Planning Department personnel to cover the phones in her absence.

Unfortunately for Shreeve, Planning Department personnel were often less than cooperative. Because of this fact and Mayor Nelson's directive, Shreeve was often delayed significantly or prevented from urinating as she needed.

Prior to beginning work with the Mayor's office, or shortly thereafter, Shreeve developed a bladder infection. Shreeve's January 1983 claim with the Department of Labor and Industries does not assert that this infection was caused by or in any way related to her work conditions. Instead, Shreeve maintains that because she was directed by the Mayor not to leave her desk unattended, and the delays she experienced as a result thereof, infected urine backed up into her kidney. There, it lodged in preexisting kidney stones, resulting in a chronic infected condition ("pyelonephritis") that resisted treatment with antibiotics. Ms. Shreeve seeks compensation for *this* infection, which necessitated the removal of her kidney in June of 1983.

Shreeve's claim initially was denied by the Department of Labor and Industries. That denial was upheld by an industrial appeals judge, but reversed by the BIIA. The City appealed that order to the Superior Court, where the transcript from the BIIA hearing was read to a jury pursuant to RCW 51.52.115.

Shreeve presented the testimony of three doctors to support her contention that her kidney disease arose "proximately" out of her employment. Dr. Corn was Shreeve's personal physician, and the treating physician in this case. Drs. Ansell and Krieger are specialists in urology and professors of medicine at the University of Washington; Dr. Ansell was the operating physician, and Dr. Krieger, who is an expert in the field of chronic kidney stone infection, was consulted by Drs. Corn and Ansell. All three doctors treated and/or examined Ms. Shreeve.

The City countered with the testimony of two physicians, both specialists in urology. The first, Dr. Kilduff, examined Shreeve once after a referral from Dr. Corn, at which point he referred her to Dr. Ansell. The second, Dr. Scheinman, did not examine or treat Shreeve.

Drs. Ansell and Krieger both testified that they believed that it was more probable than not that Carole Shreeve suffered from chronic infection of her preexisting kidney stones, which caused recurring acute kidney infections. Ansell and Corn testified that the infection more probably than not was caused by infected urine backing up into her kidneys because she was unable to void for significant lengths of time.

Dr. Kilduff testified that when he examined Shreeve, she was not *acutely* infected, but he could not say whether she had a *chronic* infection. He did not disagree with the testimony of the other doctors, admitting that Shreeve's symptoms were consistent with a *chronic* infection residing in her kidney stones. He stated that Dr. Ansell's evaluation was important to his opinion on that subject.

Dr. Scheinman's testimony was offered to cast doubt on whether Shreeve's pyelonephritis could have been caused by infected urine backing up into her kidney, thus supporting the City's position that the origin of Shreeve's kidney disease was unrelated to her work conditions. In essence, Scheinman testified that a person with a normal "valve" regulating the flow of urine between the bladder and the kidney would not be able to keep from urinating prior to the point where the infected urine *could* back up. However, the doctors disagreed about whether Shreeve's valve had been abnormal at some point in the progression of her disease, and other aspects of Scheinman's testimony were rebutted by the testimony of one or more of the other doctors.

Based upon this testimony, a judgment in Ms. Shreeve's favor was entered upon a jury verdict that her claim was compensable within the meaning of RCW 51.08.140 and RCW 51.32.180.[1] The City of Bremerton appeals from this

---

[1] RCW 51.08.140 defines occupational disease as "such disease or infection as arises naturally and proximately out of employment". RCW 51.32.180 provides that "[e]very worker who suffers disability from an occupational disease in the course of employment . . . shall receive the same compensation benefits . . . as

judgment, citing error in the instructions given and the failure of the court to give certain of its proposed instructions, and challenging the sufficiency of the evidence to support the jury's verdict.

Initially, we reject the City's contention that the adequacy of instruction 8[2] should be judged by the rule of *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 745 P.2d 1295 (1987). The instruction was a correct statement of the law according to *Department of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983), which was the most recent decision construing the "naturally" requirement of RCW 51.08.140 when this case was heard in the superior court.

The City states in its brief, without authority, that "[t]here is no question that the court intended *Dennis* to apply retroactively," and that the instruction given was error under its rule. To the contrary, the Supreme Court did not state whether its decision in *Dennis* was to be applied retroactively, and we do not address that question here. A contention not supported by authority or argument need not be considered on appeal. RAP 10.3(a)(5); *Tennant v. Roys*, 44 Wn. App. 305, 310, 722 P.2d 848 (1986).

Moreover, *Dennis* purported to weaken the *Kinville* construction of the "naturally" requirement by removing the necessity for showing that the employment conditions causing a worker's disease–based disability are "peculiar to" her employment. *See Kinville*, 35 Wn. App. at 87–88, and *Dennis*, 109 Wn.2d at 478–81. Presumably, if the worker meets the *Kinville* requirement, she has met the *Dennis*

---

would be paid and provided for a worker injured or killed in employment under this title . . ."

[2]Instruction 8 instructed the jury as to the requirement under RCW 51.08.140 that, to recover, Shreeve's disabling infection must have arisen "naturally . . . out of employment". It read:

An occupational disease is such disease or infection as arises naturally and proximately out of employment. A disease arises naturally out of employment if the job conditions exposed a worker to a greater risk of developing the disease than employment generally or nonemployment life.

test as well. Thus, even if *Dennis* were to apply retroactively, any error in instructions given pursuant to the more restrictive requirements of *Kinville* would not be prejudicial to the City.

The City next contends that the trial court erred in giving instruction 11, which incorporated a "multiple proximate cause" theory, instead of its proposed instruction 12, which did not.[3] It argues that the use of a multiple proximate cause instruction in an occupational disease case is inconsistent with the rule of *Simpson Logging Co. v. Department of Labor & Indus.,* 32 Wn.2d 472, 202 P.2d 448 (1949).[4] *Simpson* interpreted the requirement, now contained in RCW 51.08.140, that a claimant must prove that her occupational disease arose "proximately out of employment":

> The legislature is presumed to have been familiar with the meaning of "proximate cause" as used by the courts, and that being so, when they defined as an occupational disease those diseases or infections as arise naturally and *proximately* out of extrahazardous employment, it would follow that they meant that the condition of the extrahazardous employment must be *the* proximate cause of the disease for which claim for compensation is made, and that the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the disease, so that the disease would not

---

[3]Instruction 11, adapted from WPI 155.06, read:

"The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the condition or disability complained of and without which such condition or disability would not have happened.

"There may be one or more proximate causes of a condition or disability. For a worker to recover benefits under the Industrial Insurance Act, the job conditions must be a proximate cause of the alleged condition or disability for which benefits are sought. The law does not require that the occupational disease be the sole proximate cause of such condition or disability."

Proposed instruction 12 read:

"The worker's occupation must be the proximate cause of the disease. The worker must prove that the disease would not have been contracted but for the exposure to conditions existing in the occupation."

[4]Neither *Dennis* nor *Kinville* purported to modify the *Simpson* court's interpretation of the "proximately" requirement of RCW 51.08.140. *See Dennis,* 109 Wn.2d at 481–82; *Kinville,* 35 Wn. App. at 85, 87.

have been contracted *but for* the condition existing in the extrahazardous employment.

(Some italics ours.) *Simpson,* 32 Wn.2d at 479.[5] The City argues that the "multiple proximate cause" theory incorporated in WPI 155.06 and instruction 11 is for use in industrial injury cases, and is inappropriate in an occupational disease case. We disagree.

■ As we stated in *Wendt v. Department of Labor & Indus.,* 18 Wn. App. 674, 571 P.2d 229 (1977), "the 'multiple proximate cause' theory is but another way of stating the fundamental principle that, for disability assessment purposes, a workman is to be taken as he is, with all his preexisting frailties and bodily infirmities." *Wendt,* 18 Wn. App. at 682–83. *See also Champion Int'l, Inc. v. Department of Labor & Indus.,* 50 Wn. App. 91, 93, 746 P.2d 1244 (1987). The trial court did not err by so instructing the jury, or by refusing the City's proposed instruction. However, having said as much, we believe it is *preferable* to avoid the use of multiple proximate cause instructions in occupational disease cases when possible.[6] Such instructions could be misleading to a jury confronted with a disability to which several preexisting medical conditions have contributed, but which conditions did not arise out of claimant's employment.

---

[5]"Proximate cause," as used in this context, is not the equivalent of its counterpart in tort law. As pointed out by Dean Larson, the determination of legal causation in tort law has always involved two steps: first, causation in fact, and second, proximateness of cause. The first step can be settled by application of the "but for" test, while the second is usually tailored to "fault" conduct. On the other hand in workers' compensation cases, "fault" is immaterial, and work connection in fact is the only issue. *See* Larson, *The Legal Aspects of Causation in Workmen's Compensation,* 8 Rutgers L. Rev. 423, 424–26 (1954). The "naturally" requirement of RCW 51.08.140 addresses the work connection part of this equation, while the "proximately" requirement is addressed by the "but for" test set forth in *Simpson.*

[6]Of course, if a previously nondisabling disease is made disabling by more than one condition of employment, working in conjunction, the multiple proximate cause instruction (as set forth in the second paragraph of WPI 155.06) would be appropriate. Even in such cases, however, the better practice would be to supplement this instruction as discussed *infra.*

In an occupational disease case, it is the *disability,* not the disease, that is compensable. *See* RCW 51.32.180 (quoted in footnote 1).[7] Although both injury and occupational disease cases may involve claims for an aggravation of a preexisting condition, the relationship between the preexisting condition, the aggravating factor, and conditions of the worker's employment is more easily understood and susceptible of proof in injury cases than in cases of occupational disease. This is especially so when the disease in question is not readily associated with the worker's particular employment. Consequently, we believe it would be better practice to present instructions which, after defining proximate cause as set forth in the first paragraph of WPI 155.06, convey the idea that the worker is to be taken as she is, and a preexisting condition should not be considered a "cause" of the injury, but merely a condition upon which the "proximate cause" operated. *See Dennis,* 109 Wn.2d at 471, quoting *Miller v. Department of Labor & Indus.,* 200 Wash. 674, 682–83, 94 P.2d 764 (1939).

Finally, the appellant contends that there was not substantial evidence to support the verdict in that the evidence did not support a finding that Ms. Shreeve's inability to urinate was caused by objective, as opposed to subjective, conditions of employment, or a finding that Ms. Shreeve ever had a kidney infection.

As noted in *Zipp v. Seattle Sch. Dist. 1,* 36 Wn. App. 598, 676 P.2d 538 (1984), the City's challenge to the sufficiency of the evidence must be tested by a stringent standard:

> A challenge to the sufficiency of the evidence, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits for the purpose of ruling on the motion the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978). The motion requires that all evidence be interpreted in a light most

---

[7]For this reason, the City's proposed instruction 12 is an incorrect statement of the law because it refers to disease as opposed to disability. *See Dennis v. Department of Labor & Indus.,* 109 Wn.2d at 470–472.

favorable to the party against whom the motion is made and most strongly against the moving party. *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 534, 627 P.2d 104 (1981). In addition, the claim on appeal is supported by two presumptions: (1) that the findings and decisions of the Board, not having been rejected by the jury, were correct (RCW 51.52.115); and (2) that the verdict was correct. *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979). The burden is on the employer to overcome the presumption that the findings and decision of the Board are prima facie correct. *Sayler v. Department of Labor & Indus.*, 69 Wn.2d 893, 896, 421 P.2d 362 (1966). There must, however, be substantial evidence to support the Board's findings and decision. *Jepson v. Department of Labor & Indus.*, 89 Wn.2d 394, 401, 573 P.2d 10 (1977).

*Zipp,* 36 Wn. App. at 600–01.

The City has failed to overcome its heavy burden. There was substantial evidence presented from which the jury could make both of those findings. First, the proof clearly showed that the job conditions which caused Ms. Shreeve's disability were common to all of the Mayor's confidential secretaries, and did not exist solely in Ms. Shreeve's imagination. Second, Dr. Corn testified that the mayoral policy which kept Ms. Shreeve from urinating when she found it necessary was the cause of her kidney infection. In workers' compensation cases, special consideration is given to the opinion of the attending physician. *Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). Third, there was ample evidence presented by the medical testimony that Ms. Shreeve's kidney was infected, despite the fact that the pathology on the removed kidney was inconclusive on this matter.

We have considered the appellant's remaining assignments of error, and find them to be without merit. We choose not to discuss them here.

Affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.