[No. 10037-5-III.   Division Three.   June 19, 1990.]

KAISER ALUMINUM & CHEMICAL CORPORATION, *Respondent,*
v. WES H. McDOWELL, *Appellant.*

*Thomas L. Doran* and *Solan, Doran, Milhelm & Hertel,* for appellant.

*Michael J. Cronin* and *Winston & Cashatt,* for respondent.

SHIELDS, J.—On September 5, 1986, Wes H. McDowell filed a claim with the Department of Labor and Industries alleging he had suffered an occupational disease (sesamoiditis of his left foot) while employed as a carbon setter for Kaiser Aluminum & Chemical Corporation at Mead, Washington. On September 22, 1986, the Department rejected the claim; Mr. McDowell appealed to the Board of Industrial Insurance Appeals which reversed the Department's order and directed it to authorize the claim. Kaiser appealed to Superior Court. The trial court reversed the Board and disallowed the claim. It is from this order that Mr. McDowell appeals;[1] we reverse and reinstate the benefits awarded by the Board.

On July 1, 1986, Mr. McDowell, who had worked for Kaiser for almost 10 years but had since been laid off, returned to employment as a carbon setter. In addition to previous jobs at Kaiser, Mr. McDowell had approximately 1 year of experience as a carbon setter. In an undisputed finding of fact, the Board and the trial court found Mr. McDowell was required to work an average of 6 hours out of an 8-hour shift while standing on hard surfaces, including a metal catwalk which absorbed heat to an unknown degree from adjacent pot lines. (Testimony indicated water could be boiled on the deck plate which bordered the catwalk.) His average daily time for being on the catwalk was

---

[1]The Department has chosen not to participate in the appeal.

a total of 76 nonconsecutive minutes. He also had to climb three metal stairs to the catwalk 12 times a day.

Mr. McDowell had no history of foot problems prior to starting as a carbon setter in July 1986. The pain in his foot began 3 days later. Mr. McDowell consulted a company physician who unsuccessfully treated the condition with ibuprofen. The physician referred Mr. McDowell to Dr. James D. Perry, an orthopedic specialist, who examined Mr. McDowell on August 13, 1986. Dr. Perry diagnosed the disease as sesamoiditis, an inflammation of the sesamoid bones at the base of the large toe. A steroid and lidocaine were injected directly into the foot and Mr. McDowell was on crutches for 2 weeks. Following treatment, the condition cleared up. Mr. McDowell did not resume his duties as a carbon setter but transferred to a maintenance position with Kaiser.

■ The issue presented is whether the conditions of Mr. McDowell's employment were so distinctive as to naturally and proximately cause an occupational disease, sesamoiditis, and resulting disability. Thus, it is necessary to decide if the trial court erred in making finding of fact 5 which states:

> The . . . job duties described in Finding of Fact IV are not distinctive conditions of his employment and his left foot sesamoiditis did not arise naturally and proximately out of his employment . . ..

Review on appeal is limited to whether this finding is supported by substantial evidence and whether a proper conclusion of law flows therefrom. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 748, 662 P.2d 391 (1982).

The Legislature has provided that a worker who becomes disabled from an occupational disease shall receive the same benefits under the workers' compensation act as those received by a worker suffering an injury. RCW 51.32.180.[2]

---

[2] RCW 51.32.180 provides:

"Every worker who suffers disability from an occupational disease in the course of employment under the mandatory or elective adoption provisions of this

An occupational disease is defined at RCW 51.08.140 as "such disease or infection as arises naturally and proximately out of employment . . .". Here, Mr. McDowell contends the trial court erred in concluding his condition was not the natural and proximate result of his conditions of employment. We agree.

In *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 745 P.2d 1295 (1987), a disabled sheet metal worker sought judicial review of his claim for industrial compensation based upon the onset of an occupational disease. He claimed the continued use of tin snips over the course of 38 years had lit up a latent osteoarthritic condition in his wrists causing disability, a conclusion which was confirmed by his attending physician. With respect to the statutory element of "naturally", *Dennis*, at 481, states:

> We hold that a worker must establish that his or her occupational disease came about as a matter of course as *a natural consequence or incident of distinctive conditions* of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, *the focus is upon conditions giving rise to the occupational disease,* or the disease-based disability resulting from work-related aggravation of a nonwork-related disease, and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her particular work conditions more probably caused his or her disease or disease-based disability than conditions in everyday life or all employments in general; the disease or disease-based disability must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the disease or disease-based disability *must be conditions of employment,* that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.

(Italics ours.) *Dennis* relaxed the requirements of *Department of Labor & Indus. v. Kinville,* 35 Wn. App. 80, 87, 664 P.2d 1311 (1983) which required the worker to prove "that the conditions producing his disease are *peculiar to, or*

title, . . . shall receive the same compensation benefits and medical, surgical and hospital care and treatment as would be paid and provided for a worker injured or killed in employment under this title . . .".

*inherent in,* his particular occupation." (Footnote omitted. Italics ours.) More recently, this court held "[i]n an occupational disease case, it is the *disability,* not the disease, that is compensable." *Bremerton v. Shreeve,* 55 Wn. App. 334, 341, 777 P.2d 568 (1989).

Because Kaiser sought review in the Superior Court of Mr. McDowell's award of benefits, it had the burden of proof with respect to establishing the error of the Board's decision. RCW 51.52.115.[3] Three factors were described as distinctive conditions of employment: heat, hard surfaces, and climbing stairs. Although controverting testimony was presented as to the degree of heat and number of stairs climbed during a daily shift, it was undisputed the exposure to heat was sufficient to require Kaiser to issue carbon setters with specialized boots to wear while on the job. There was testimony these boots could wear out within 60 days from exposure to the extreme heat on the pot lines. Thus, though standing on hard surfaces and climbing stairs may be common conditions in the workplace, in combination with the heat, these particular factors rise to the level of distinctive conditions of employment inherent in the occupation of carbon setter.

Kaiser must also prove the sesamoiditis was not a natural consequence or incidence of the combination of factors noted above. The only medical evidence before the court was the testimony of Dr. Perry, Mr. McDowell's attending physician. He stated sesamoiditis could be caused by exposure to heat or a combination of heat, standing on hard surfaces and climbing stairs. Dr. Perry also referred to Mr. McDowell's history which indicated he climbed stairs, stood on concrete floors and was exposed to heat during his employment hours. Kaiser responds Dr. Perry was unable to describe with any particularity the length of time Mr. McDowell was on his feet, the number of stairs he climbed

---

[3]RCW 51.52.115 provides in pertinent part: "In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same."

or the degree of heat to which he was exposed. Notwithstanding, Dr. Perry's testimony was admitted at the hearing so the question raised by Kaiser involves the weight to be given this evidence, not its admissibility. It is recognized the superior court reviews the Board's decision de novo. RCW 51.52.115. However, because Dr. Perry's testimony was uncontradicted by any other medical testimony, it was the only evidence available to resolve the question as to whether the conditions of employment were so distinctive as to naturally and proximately cause the sesamoiditis. Finding of fact 5 disregarded the doctor's testimony and was not supported by substantial evidence. Therefore, the court erred in denying Mr. McDowell benefits.

The judgment is reversed.

GREEN, A.C.J., and THOMPSON, J., concur.