[No. 23357-6-II.  Division Two.  June 25, 1999.]

SIMPSON TIMBER COMPANY, *Appellant,* v. CYNTHIA WENTWORTH, *Respondent.*

*Richard Paul Lentini* of *Ryan, Swanson & Cleveland, P.L.L.C.*, for appellant.

*Wayne L. Williams* of *Rolland, O'Malley, Williams & Wyckoff, P.S.*; and *Christine O. Gregoire, Attorney General*, and *Lisa Marsh, Assistant*, for respondent.

BRIDGEWATER, C.J. — Simpson Timber Company appeals a Department of Labor and Industries (L&I) order allowing a workers' compensation claim by Cynthia Wentworth for a foot condition aggravated by her employment. Simpson unsuccessfully appealed the L&I order to both the Board of Industrial Insurance Appeals (the Board) and Grays Harbor Superior Court. We affirm and award attorney fees pursuant to statute.

Wentworth began working for Simpson in 1980, and held

several different jobs with the company. All of the jobs entailed prolonged standing on cement floors. Over time Wentworth developed foot problems.

From 1980 until 1994, her jobs required her to stand longer than seven hours a day with two 10-minute breaks and one 20- to 30-minute lunch break. Wentworth's jobs included grading, cutting, and off-bearing (unloading) lumber. All of these jobs required her to lift lumber and walk a short distance while carrying it. When her foot problem became disabling, Wentworth was a style-rip operator, which required her to run lumber through a saw and generally stand in one position or off-bear on the other side of the saw.

Wentworth first sought help for her foot problem in 1989. In 1992, she saw Dr. Robert Worth, who referred her to a podiatrist, Dr. Horsman. Wentworth received various treatments, including orthotic inserts for her shoes and injections of medicine. In 1994, she stopped working for several months, then returned on a reduced schedule, but ultimately she could no longer tolerate standing and she stopped working altogether.

After it became clear that she could no longer work, Wentworth submitted a claim to L&I. Originally, it appears that L&I denied the claim.[1] But on April 13, 1995, L&I issued an order that allowed Wentworth's claim as an occupational disease consisting of an aggravation of a preexisting condition. Simpson, a self-insured entity under the Industrial Insurance Act (the Act), appealed the order to the Board.

At the hearing before the Board, Simpson called several witnesses: two podiatrists (including Dr. Horsman), an orthopedic surgeon, and Simpson's workers' compensation administrator. Wentworth, Dr. Horsman, and Dr. Worth testified in favor of her claim.

Simpson's expert, Dr. Reese, diagnosed Wentworth as

[1]The Board decision and order refers to an earlier L&I order of March 20, 1995.

having a congenital foot condition known as a "cavo-varus" deformity (her heels tilt toward the midline and she has high arches). This diagnosis, if correct, means that, as a result of a natural condition, Wentworth is predisposed to having foot problems. Dr. Reese suggested that rheumatoid arthritis possibly caused Wentworth's condition.

Dr. Worth and Dr. Horsman both diagnosed Wentworth as having plantar fascitis (an inflammation of the underlying connective tissues in the foot). These doctors concluded that Wentworth's plantar fascitis was aggravated by her work conditions, specifically, standing for long periods of time on cement floors.

At the conclusion of the Board hearing, the judge issued a proposed decision and order affirming the L&I order. Simpson petitioned for the Board to review the case. The Board granted the petition but again affirmed the L&I order.

Simpson again appealed to superior court and requested a jury trial. As provided by the Act, the trial testimony consisted wholly of the record before the Board. Simpson objected to instruction 11 given by the court. The jury returned a verdict affirming the Board and the court entered a principal judgment of $6,839.26, no accrued interest on the principal as of the date of the judgment, and attorney fees[2] of $6,690. From this judgment, Simpson again appeals. L&I has chosen not to participate in the appeal.

■ This case concerns a workers' compensation claim under the Act. The Act was intended to provide "sure and certain relief for workers, injured in their work, and their families and dependents . . . regardless of questions of fault and to the exclusion of every other remedy[.]" RCW 51.04.010. To serve this goal of providing compensation to all covered workers injured in their employment, the Act should be liberally construed, with all doubts resolved in

---

[2]Attorney fees are specifically provided for by the Industrial Insurance Act when a worker's claim is sustained on appeal. RCW 51.52.130 (discussed below).

favor of the worker. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

## I. Distinctive Condition

Simpson claims that Wentworth cannot trace her foot problems to a "distinctive condition" of her employment because, as a matter of law, "standing, walking and turning on hard surfaces are not distinctive conditions of any particular employment." Simpson's entire appeal rests on this premise.

Simpson first asks this court to hold, *as a matter of law*, a worker may *never* recover compensation for a foot disease attributed to prolonged standing on cement floors, no matter how many hours a day and no matter how many years the worker is required to stand.

An occupational disease is defined in RCW 51.08.140 as "such disease or infection as arises naturally and proximately out of employment[.]" In *Dennis*, the Supreme Court held:

> a worker must establish that his or her occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. *The conditions need not be peculiar to, nor unique to, the worker's particular employment.*

109 Wn.2d at 481 (emphasis added). The emphasized sentence refines what is meant by the term "distinctive conditions" of employment.

Simpson suggests that it is entitled to judgment as a matter of law because there is nothing distinctive about hard floors. Since hard floors are omnipresent, they are not distinctive. The argument is simple but unpersuasive.

In *Dennis*, the Supreme Court held that: (1) disability resulting from work-related aggravation of a nonwork-related disease may be compensable as an occupational disease, and (2) a worker need not demonstrate that his or her particular job requirements subject the worker to a

"greater risk" of contracting the disease than other types of employment or nonemployment life (overruling *Department of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983)). 109 Wn.2d at 471-84. Simpson essentially resurrects and repackages the "greater risk" argument that the Supreme Court specifically rejected in *Dennis*. Simpson asserts that all workers encounter hard floors; therefore, Wentworth may not recover. *Dennis* does not support this thesis.

Simpson also misplaces emphasis on *Kaiser Aluminum & Chemical Corp. v. McDowell*, 58 Wn. App. 283, 792 P.2d 1269 (1990), where Division Three of this court reversed a superior court order that disallowed the worker's claim for a disabling foot inflammation. McDowell was a carbon setter at Kaiser. For six hours out of an eight-hour shift, he stood on hard surfaces including a "metal catwalk which absorbed heat to an unknown degree from adjacent pot lines." *Id.* at 284. While discussing the distinctive conditions causing the injury, Division Three stated: "Thus, though standing on hard surfaces and climbing stairs may be common conditions in the workplace, in combination with the heat, these particular factors rise to the level of distinctive conditions of employment inherent in the occupation of carbon setter." *Id.* at 287. Simpson relies upon the implication in this passage that standing on hard surfaces, by itself, is not a distinctive condition.

But *McDowell* is readily distinguished. There, the worker's foot problems began three days after starting work as a carbon setter. *Id.* at 285. Apart from an earlier, one-year stint as a carbon setter, it appears that McDowell's tenure in the position lasted no more than a few weeks or months before he sustained injury. *See id.* As such, *McDowell* does not address the factual scenario of a worker who stands for prolonged periods each day for years upon end.

While it may be commonplace for workers to stand and

move about on hard surfaces, it is certainly less common for workers to do so for *prolonged periods of time*. While perhaps most workers of reasonably good health may not suffer a disabling disease from prolonged standing, this is not the inquiry or the legal test under the Act. "The worker is to be taken as he or she is, with all his or her preexisting frailties and bodily infirmities." *Dennis*, 109 Wn.2d at 471 (citing *Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 682-83, 571 P.2d 229 (1977)). *Dennis* also held that the conditions need not be peculiar to, or unique to, the worker's employment. 109 Wn.2d at 481.

Prolonged standing or movement on cement floors may cause an occupational disease in someone who may be predisposed to foot problems, like Wentworth; we will not hold as a matter of law that it cannot. Whether prolonged standing aggravated Wentworth's foot condition in this case is a question that was properly left for the trier of fact. L&I, the Board, and the jury found in favor of Wentworth.

■■ Simpson also challenges the sufficiency of the evidence supporting the Board's findings.[3] In challenging the sufficiency of the evidence, Simpson must admit the truth of the claimant's evidence and all inferences that can reasonably be drawn therefrom. *Intalco Aluminum Corp. v. Department of Labor & Indus.*, 66 Wn. App. 644, 653, 833 P.2d 390 (1992), *review denied*, 120 Wn.2d 1031 (1993). "In applying this standard, the trial and appellate courts must interpret the evidence in favor of the claimants and against the defendant." *Id.* at 653. The findings and decisions of the Board are deemed to be prima facie correct. RCW 51.52.115. Similarly, the superior court jury verdict upholding the Board's findings and decision must also be presumed to be correct. *Intalco*, 66 Wn. App. at 653-54 (citing *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979)).

---

[3]Simpson's separate argument that Wentworth's foot condition "only coincidentally occurs on the job" is appropriately analyzed as a challenge to the sufficiency of the evidence supporting causation.

Simpson claims that no evidence supports the Board's finding that Wentworth's condition "was proximately caused by, and naturally arose from, distinctive conditions of her particular employment." But Simpson slightly mischaracterizes the Board's finding: the Board never specifically found that Wentworth's employment conditions *caused* her foot problems. Instead, the Board found that the *aggravation* of Wentworth's plantar fascitis was proximately caused by her employment conditions. Under the clear rule articulated in *Dennis*, a worker is entitled to compensation under the Act for a disability resulting from work-related aggravation of a nonwork-related disease. 109 Wn.2d at 471-76.

■ Sufficient evidence in the record supports the Board's finding that standing for prolonged periods of time on cement floors aggravated Wentworth's condition. In workers' compensation cases, a fact finder must give special consideration to the opinion of the attending physician. *Intalco*, 66 Wn. App. at 654 (citing *Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988)). "This is because an attending physician is not an expert hired to give a particular opinion consistent with one party's view of the case." *Intalco*, 66 Wn. App. at 654.

Wentworth's attending podiatrist, Dr. Horsman, testified that:

> The patient clearly has a pattern of symptoms of overuse and plantar fascial strain which had been present for some time. Progressively increasing as she spends time through the day at work. No one argues that this is an occupational injury, *but it is clearly an occupational disease on a more probable than not basis, and certainly, aggravated by conditions of employment.*

Construing this testimony under the standard of review set forth in *Intalco*, the evidence was sufficient.

## II. Jury Instructions

■ Simpson also challenges the instructions given to the

jury. Simpson claims that the court erred in giving instructions 10 and 11. (A commissioner of this court allowed Simpson to supplement the record on appeal to include the verbatim report of proceedings from the superior court.) Simpson did not object below to instruction 10, therefore we decline to review it. RAP 2.5(a); *St. Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, 658, 705 P.2d 812, *review denied*, 104 Wn.2d 1029 (1985).

■ ■ This court reviews claimed instructional errors as follows:

> The number and specific language of the instructions are matters left to the trial court's discretion. The test for the sufficiency of instructions involves three determinations: (1) that the instructions permit the party to argue that party's theory of the case; (2) that the instruction(s) is/are not misleading; and (3) when read as a whole all the instructions properly inform the trier of fact on the applicable law. No more is required.

*Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 809, 872 P.2d 507 (1994) (footnotes omitted) (quoting *Douglas v. Freeman*, 117 Wn.2d 242, 256-57, 814 P.2d 1160 (1991)). "[A]n erroneous instruction requires reversal only if it is prejudicial, that is, only if the error affects or presumptively affects the outcome of the trial." *Williams v. Virginia Mason Med. Ctr.*, 75 Wn. App. 582, 587, 880 P.2d 539 (1994) (citing *Caruso v. Local Union No. 690*, 107 Wn.2d 524, 530, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987)).

Simpson claims that the trial court erred by failing to insert the word "distinctive" before the words "work condition" in instruction 11.[4] This argument is without merit. The instruction is not misleading and, taking the instruc-

---

[4]Instruction 11 provided:

> If a work condition lights up, or makes disabling, a latent or preexisting infirmity or weakened condition, then the resulting disability is to be attributed to the work condition, if the work condition or conditions complained of, is or are a proximate cause of the disability from which the worker suffers, then the previous physical condition of the worker is immaterial, and the work

tions together, Simpson was able to argue its theory of the case because instruction 9 defined occupational disease with reference to "distinctive conditions" of employment. Read together, the jury was properly instructed.

## III. Attorney Fees

Wentworth has prevailed upon appeal. If, on appeal to an appellate court, "a party other than the worker or beneficiary is the appealing party and the worker's . . . right to relief is sustained, a reasonable fee for the services of the worker's . . . attorney shall be fixed by the court." RCW 51.52.130. Thus, Wentworth shall be awarded reasonable attorney fees under the Act upon compliance with RAP 18.1.

Affirmed.

MORGAN and HUNT, JJ., concur.

condition is considered to be the legal cause of the full disability, regardless of any preexisting or congenital weakness or infirmity.