FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 1 0 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Aug 10 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROGER A. STREET, | |
| Respondent, | NO. 93984-5 |
| v. | |
| WEYERHAEUSER COMPANY, | EN BANC |
| Petitioner. | Filed ___ AUG 1 0 2017 |

STEPHENS, J.—Weyerhaeuser Company, Roger A. Street's former employer, challenges Street's award of industrial insurance benefits for his low back condition, a claimed occupational disease. An "occupational disease" is a disease that "arises naturally and proximately out of employment." RCW 51.08.140. In *Dennis v. Department of Labor & Industries*, 109 Wn.2d 467, 477, 745 P.2d 1295 (1987), this court held that a worker seeking benefits for an occupational disease must present expert medical testimony that the disease "arise[s] 'proximately'" out of employment. Weyerhaeuser argues that in light of *Dennis*, such a worker must also present expert medical testimony that the disease "arises naturally" out of employment.

The Court of Appeals rejected Weyerhaeuser's argument, holding that neither *Dennis* nor any other appellate decision requires Street to present expert medical testimony to show that his back condition "arose naturally" from employment. Because there was medical testimony supporting the "arises proximately" requirement and lay testimony supporting the "arises naturally" requirement, the appeals court held that Street proved his low back condition is an occupational disease and affirmed the jury award of benefits. We affirm the Court of Appeals.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Street worked for Weyerhaeuser or its subsidiary (Norpac) his entire career. In 1991, Street began working in one of Norpac's paper mills, where he held various positions for the next 20 years. Although Street had back problems prior to working in the paper mill, he did not find the problems disabling until he was injured at the mill in 2011. More than one year later, Street applied for workers' compensation benefits due to that injury. The Department of Labor and Industries (Department) treated the application as an injury claim and denied it as untimely.

Later that year, the Department affirmed the denial and sent Street a separate letter stating that the claim was for an injury, not an occupational disease. *Compare* RCW 51.28.050 (worker must file injury claim within one year of the date on which the injury occurred), *with* RCW 51.28.055(1) (worker must file occupational disease

claim within two years of the date the worker had notice of the occupational disease or of the ability to file a claim for disability benefits). Street appealed the Department's order and letter to the Board of Industrial Insurance Appeals (Board), clarifying that he intended to file an occupational disease claim. Weyerhaeuser moved for an order granting summary judgment and dismissing Street's appeal. An industrial appeals judge granted Weyerhaeuser partial summary judgment, dismissing Street's claim as untimely to the extent he alleged an injury, but directing the case to go forward on an occupational disease theory.

The industrial appeals judge conducted hearings, at which Street, his family members, his supervisor, and three medical experts testified.

Street testified that his duties as an assistant winder operator included placing cores—dense cardboard at the center of a paper roll—into the winder of the paper machine so that the machine could produce individual paper rolls. His duties also included monitoring paper machines, repairing broken machines, "manhandling" paper rolls by grabbing and pushing the core of the roll, bending over to sand cores, and tacking bar codes onto the finished paper rolls. The paper rolls were approximately 40 to 50 inches in diameter and weighed on average 1,000 pounds. The cores, on which the rolls were placed, weighed on average 2 to 10 pounds. Street worked 12-hour shifts with few breaks, if any. Some of Street's work became automated over the last 10

years, and during the last couple of years, Street worked in a less demanding monitoring role about 30 percent of the time.

Richard T. Moore, Street's supervisor of two to five years, gave slightly different testimony regarding Street's role. Moore testified that Street held the less demanding monitoring role about 75 percent of the time, that Street sat approximately 20 percent of the time as an assistant winder operator, and that workers typically had help manhandling the paper rolls, which might happen 0 to 12 times a day.

Dr. Patricia Peterson, Street's primary care physician of 20 years, testified that she was familiar with the nature of Street's work "[t]o some degree" and described his role in the paper mill as a "very heavy job, . . . a moving job, . . . [not] just a sit around and watch things go job." Clerk's Papers (CP) at 313, 315, 319, 321. She testified that she diagnosed Street with chronic low back pain related to degenerative arthritis and degenerative disease of the spine, which can occur over time from repetitive use. Although on Street's short-term disability claim form she had checked a box indicating that the condition was not work related, she later testified on a more probable than not basis that the kind of work Street did, as opposed to everyday wear and tear of daily living, at least in part caused Street's low back condition because he used "a lot of his body weight" and his "abdominal muscles" in manhandling paper rolls. *Id.* at 322-23, 326. Dr. Peterson acknowledged that even though Street had come in with complaints

of low back pain unrelated to work (e.g., moving furniture, doing yard work), the repetition of handling paper rolls was a factor contributing to Street's low back condition.

Dr. Yuri Tsirulnikov, an osteopathic physician who treated Street five to six times, testified that Street's work more probably than not contributed to his low back condition, though he could not say to "what extent" it contributed. *Id.* at 362, 364, 367-68, 371. He indicated that Street's weight, genetics, and "probably some other physical activities that he did at home" also contributed to Street's low back condition. *Id.* at 384.

Dr. Thomas Rosenbaum, a neurosurgeon who examined Street at Weyerhaeuser's request, opined that Street's work did not proximately cause his low back condition. He diagnosed Street with lumbar spondylosis and degenerative disc disease, and testified that genetics and age are the main factors contributing to these conditions. In his opinion, Street's physical exertion at work contributed to his low back condition "maybe . . . two or three percent," if at all. *Id.* at 431-32.

At the conclusion of the proceedings, the industrial appeals judge issued a proposed order and decision reversing the Department's denial of benefits. Weyerhaeuser petitioned the full Board for review. The full Board affirmed the Department's denial of benefits, but directed the Department to find that Street filed an

occupational disease claim that was rejected because he failed to prove his low back condition arose "naturally and proximately" out of distinctive conditions of his employment. *Id.* at 49, 54-55.

Street appealed the Board's order to Cowlitz County Superior Court. Weyerhaeuser moved for judgment as a matter of law on the ground that Street failed to present expert medical testimony that his low back condition "arose naturally" out of distinctive conditions of his employment. The superior court denied the motion and sent the case to trial. The jury found that Street's back condition is an occupational disease that arose "naturally and proximately" out of the distinctive conditions of his employment. *Id.* at 532. Based on the verdict, the superior court reversed the Board's order and remanded to the Department with directions to accept Street's occupational disease claim. *Id.* at 534-35.

Weyerhaeuser appealed to Division Two of the Court of Appeals, which transferred the matter to Division One of the Court of Appeals. Order Transferring Cases, *Street v. Weyerhaeuser Co.*, No. 48559-1-II (Wash. Ct. App. Aug. 16, 2016). In an unpublished decision, the Court of Appeals affirmed, holding that Street was not required to present medical testimony to satisfy the "arises naturally" requirement, and that the evidence was sufficient to support a finding that Street's back condition qualifies as an occupational disease. *Street v. Weyerhaeuser Co.*, No. 75644-3-I, slip

op. at 1, 4, 7 (Wash. Ct. App. Nov. 28, 2016) (unpublished), http://www.courts. wa.gov/opinions/pdf/756443.pdf.

Weyerhaeuser then filed a petition for review in this court, which we granted. *Street v. Weyerhaeuser Co.*, 187 Wn.2d 1025, 391 P.3d 457 (2017).

## ANALYSIS

The Industrial Insurance Act (IIA), Title 51 RCW, provides "sure and certain relief for workers, injured in their work." RCW 51.04.010. Workers "who suffer[] disability from an occupational disease in the course of employment" are entitled to "the same compensation benefits" as injured workers. RCW 51.32.180. In the present case, Street alleges that his chronic low back condition is an occupational disease. CP at 57.

"'Occupational disease' means such disease . . . as arises naturally and proximately out of employment." RCW 51.08.140. In *Dennis*, 109 Wn.2d 467, this court discussed the requirements for such a claim. "Arises proximately" means that employment conditions "'must be the proximate cause of the disease . . . so that the disease would not have been contracted but for the [employment] condition.'" *Id.* at 477 (footnote omitted) (quoting *Simpson Logging Co. v. Dep't of Labor & Indus.*, 32 Wn.2d 472, 479, 202 P.2d 448 (1949)). This "causal connection . . . must be established

by competent medical testimony which shows that the disease is probably, as opposed to possibly, caused by the employment." *Id.*

> "Arises naturally" requires a worker to
>
> establish that his or her occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, the focus is upon conditions giving rise to the occupational disease . . . and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her particular work conditions more probably caused his or her disease . . . than conditions in everyday life or all employments in general; the disease . . . must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the disease . . . must be conditions of *employment*, that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.

*Id.* at 481. Although the court in *Dennis* discussed what a worker must prove to demonstrate a disease "arises naturally" out of employment conditions, it did not specifically address whether expert medical testimony is required to prove it. That issue is now before us.

I.    The "Arises Naturally" Requirement Need Not Be Established by Expert Medical Testimony

As noted, to satisfy the "arises naturally" requirement, a worker must prove that his or her occupational disease came about as a natural consequence of distinctive employment conditions. *Id.* Weyerhaeuser contends that whether a disease "arises naturally" from distinctive conditions of employment constitutes an

issue of medical causation that must be proved through expert medical testimony. Pet. for Review at 8, 19. Street counters that while the "arises naturally" requirement presents an issue of *general* causation, it does not present an issue of *medical* causation requiring expert testimony. Suppl. Br. of Resp't at 2. Rather, it is a causation issue pure and simple; as with most factual causation determinations, it does not require expert opinion. *Id.* at 5; Br. of Resp't at 12-13.

We believe the remedial nature of the IIA, the standard governing the need for expert testimony, and our case law all support Street's argument. We discuss each of these reasons more fully below.

a. The IIA Is Broadly Construed in Favor of Workers

This court has consistently held that because the IIA "is remedial in nature," it must be "liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis*, 109 Wn.2d at 470. "With this principle in mind," *id.*, both the legislature and this court have expanded occupational disease coverage under the IIA. The trend toward liberal coverage supports Street's argument that a worker need not present expert medical testimony to prove an occupational disease "arises naturally" from employment.

*Dennis* is the leading case on occupational disease. There, this court held that the "historical development of occupational disease coverage in Washington" supports the conclusion that a preexisting condition exacerbated by work comes within the definition of an "occupational disease." *Id.* at 472. This court explained that at the time the IIA was enacted, there was "no coverage for disability resulting from occupational disease[,] only injuries sustained performing certain extrahazardous work." *Id.* The legislature subsequently "passed the first law providing compensation for disability resulting from certain enumerated diseases," including "specific conditions resulting from repetitive work activities." *Id.* at 473. Eventually, the legislature "again broadened coverage by eliminating the list of enumerated compensable diseases, and enacting the present definition of occupational disease," although compensation was available only for extrahazardous employment. *Id.* Finally, the legislature eliminated the extrahazardous employment requirement and "provided coverage for disability resulting from occupational disease in all employment." *Id.* This court summarized, "From 'no coverage' to the present broad definition of occupational disease, the Legislature has repeatedly and consistently provided expanded coverage for disability resulting from occupational disease." *Id.* at 473-74. This court concluded that it was a natural next step to expand

coverage to disabilities resulting from "work-related aggravation of . . . preexisting nonwork-related diseases." *Id.* at 474.

In addition to expanding coverage, this court has at least in two instances relaxed the worker's burden of proof for an occupational disease claim. First, in *Sacred Heart Medical Center v. Carrado*, 92 Wn.2d 631, 632-33, 600 P.2d 1015 (1979), this court held that the medical testimony was sufficient to support the jury's finding that a nurse had contracted hepatitis as a result of her employment even though the medical testimony indicated that it is nearly impossible to pinpoint the source of the disease. In so holding, this court stated that while "the causal connection between a [worker's] physical condition and his employment must be established by" medical testimony, our cases do not require a medical opinion on "the ultimate issue" in every instance. *Id.* at 636. Rather, "[i]t is sufficient if the medical testimony *shows* the causal connection." *Id.* In other words, it is sufficient if "a reasonable person can infer" from the medical testimony, in conjunction with lay testimony, "that the causal connection exists." *Id.* at 637. This suggests there are no "magic words" for proving the issue of medical causation. Indeed, in later describing its holding, this court stated, "*Sacred Heart* does not *require* each [worker claiming] occupational disease coverage to prove an increased risk of disease-based disability due to conditions of his or her particular employment, but instead *eases*

*the burden of proof* requirement." *Dennis*, 109 Wn.2d at 482 (second emphasis added).

Second, in interpreting the "arises naturally" requirement, this court specifically rejected a lower court's more stringent definition. *Id.* at 478-79 (rejecting *Dep't of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983)). "*Dennis* relaxed the requirements of" *Kinville*, "which required the worker to prove 'that the conditions producing his disease are *peculiar to, or inherent in*, his particular occupation.'" *Kaiser Alum. & Chem. Corp. v. McDowell*, 58 Wn. App. 283, 286-87, 792 P.2d 1269 (1990) (quoting *Kinville*, 35 Wn. App. at 87). In *Dennis*, this court held that "[t]he conditions need not be peculiar to, nor unique to, the worker's particular employment." 109 Wn.2d at 481. Instead, they need only be "distinctive" conditions "of the worker's particular occupation as opposed to conditions coincidentally occurring" in the workplace. *Id.*

Both the legislature's amendments to and this court's decisions interpreting the occupational disease statute evidence a trend toward expanded coverage and a more relaxed burden of proof. Allowing a worker to prove the "arises naturally" requirement without the necessity of medical testimony aligns with this trend.

b. Expert Medical Testimony Is Necessary Only for Issues of Medical Causation, and the "Arises Naturally" Requirement Is Not Such an Issue

In determining whether the "arises naturally" requirement must be proved through expert medical testimony, it is helpful to consider in what circumstances expert testimony is generally useful. "The admissibility of expert testimony in Washington is governed by" Evidence Rule (ER) 702. *Reese v. Stroh*, 128 Wn.2d 300, 305, 907 P.2d 282 (1995). That rule provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert "may testify thereto in the form of an opinion." ER 702. With regard to expert medical testimony, the "general rule" is that

> expert medical testimony is *required* on only those matters "strictly involving medical science". The basic question is whether the particular fact sought to be proved is such as is "observable by [a layperson's] senses and describable without medical training".

*Smith v. Shannon*, 100 Wn.2d 26, 33, 666 P.2d 351 (1983) (matters involving medical science include "the nature of the harm which may result and the probability of its occurrence" because "[o]nly a physician . . . is capable of judging what risks exist and their likelihood of occurrence" (alteration in original) (citation omitted) (quoting 2 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 568, at

-13-

779 (rev. 1979); *Bennett v. Dep't of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981))).

In the context of occupational disease claims, matters involving medical science include the "'cause and extent'" of the disability. *Eyer v. Dep't of Labor & Indus.*, 1 Wn.2d 553, 555, 96 P.2d 1115 (1939) (quoting *Atl. Ref. Co. v. Allen*, 1939 OK 116, 185 Okla. 194, 195, 90 P.2d 659); *see also Hoff v. Dep't of Labor & Indus.*, 198 Wash. 257, 266, 88 P.2d 419 (1939) ("[U]pon a medical question regarding the nature and effect of a particular ailment . . . those who are versed in the science of medicine are better able than are we to form a true and accurate opinion.").

Weyerhaeuser contends that the "arises naturally" requirement is an issue of medical causation requiring expert medical testimony that "the work activities at Weyerhaeuser were distinctive, compared to activities that are common to employment generally and daily life, when viewed as a cause of lumbar spondylosis." Br. of Appellant at 19. We find this argument unavailing. "Arises proximately" means that the employment conditions must be the proximate cause of the disease. *Dennis*, 109 Wn.2d at 477. "Arises naturally" means that the conditions of a worker's particular employment are distinctive, i.e., different from, employments in general or activities of daily living. *Id.* at 481. The first requirement involves an issue of medical causation, but the second requirement pertains to

observable job activities. *See, e.g., City of Bremerton v. Shreeve*, 55 Wn. App. 334, 340 n.5, 777 P.2d 568 (1989) ("The 'naturally' requirement . . . addresses the work connection . . . , while the 'proximately' requirement is addressed by the 'but for' test.").

Viewing the requirements this way explains why the court in *Dennis* explicitly stated only that expert medical testimony is necessary for the "arises proximately" requirement. *See* 109 Wn.2d at 477. Medical professionals specialize in diagnosing patients' conditions, not in familiarizing themselves with various job duties. Street aptly notes that many treating physicians would balk at any requirement that they "become experts as to job duties that exist in all employments in general, or testify as to what constitutes activities of daily living, versus distinctive job duties." Suppl. Br. of Resp't at 5. Amicus Washington State Association for Justice Foundation further observes, "[A] medical professional has no particular qualifications that would help the trier of fact to determine whether the conditions of a worker's particular employment are distinctive." Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 13; *see also* Wash. Supreme Court oral argument, *Street v. Weyerhaeuser Co.*, No. 93984-5 (June 13, 2017), at 5 min., 07 sec. through 6 min., 00 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (Weyerhaeuser's counsel noting that medical professionals

become familiar with employment conditions in part through patients' explanations of their job duties). Instead, "[a] witness familiar with the worker's job requirements and the particular manner in which the worker performed those job requirements can provide evidence to assist the trier of fact to determine whether job conditions are distinctive." Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 13-14; *see also Bennett*, 95 Wn.2d at 533 ("[L]ay witnesses may testify to such aspects of physical disability of an injured person as are observable by their senses and describable without medical training.").

Given that the "arises naturally" requirement presents the nonscientific question of whether the conditions of a worker's particular employment are distinctive, it stands to reason that it can be established by lay testimony without the need for expert medical opinion.

> c. Washington Case Law Does Not Suggest the "Arises Naturally" Requirement Must Be Proved Through Expert Medical Testimony

No Washington case holds that expert medical testimony is necessary to satisfy the "arises naturally" requirement. Weyerhaeuser argues, however, that language in several cases suggests a worker must prove a *"distinctive* employment *cause"* through expert medical testimony. Br. of Appellant at 15-18 (emphasis added).

As an initial matter, Weyerhaeuser is mistaken to the extent it argues a worker must show a "distinctive risk" or "distinctive cause" to meet the "arises naturally" requirement. *See, e.g.*, Pet. for Review at 5 ("Neither doctor addressed whether claimant's work activities presented a *distinct risk* of causing lumbar spondylosis." (emphasis added)); Br. of Appellant at 19 ("The issue whether particular work conditions constituted a *'distinctive' cause* of a medical condition presents a medical question." (emphasis added)). As Street and supporting amicus point out, this "is no different than the argument that a worker must show that the particular employment exposed him or her to a greater risk of contracting the occupational disease than would other employments or everyday life." Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 15; *see also* Suppl. Br. of Resp't at 11-12. Because we previously rejected this "greater risk" requirement in *Dennis*, 109 Wn.2d at 482, Weyerhaeuser is mistaken to the extent it advocates for adoption of this requirement.[1] A worker need only show "distinctive conditions" of employment to meet the "arises naturally" requirement.

---

[1] As Street's counsel articulated at oral argument, requiring a worker to prove a distinctive cause or a distinctive risk of employment is inconsistent with the legislative history of the IIA, which now allows occupational disease claims for all employment, not just extrahazardous employment. Wash. Supreme Court oral argument, *supra*, at 19 min., 16 sec. through 20 min., 41 sec.; *see also Dennis*, 109 Wn.2d at 473-74.

Weyerhaeuser's argument is also unpersuasive because the cases on which it relies do not support its position. In *Dennis*, a sheet metal worker filed an occupational disease claim for osteoarthritis localized in his wrists. 109 Wn.2d at 468-69. This court reaffirmed that the "arises proximately" requirement "must be established by competent medical testimony which shows that the disease is probably, as opposed to possibly, caused by the employment." *Id.* at 477. Because the worker's attending physician testified that "more probably than not, the osteoarthritis . . . was made symptomatic and disabling by . . . repetitive tin snipping," this court held that there was "sufficient medical evidence in the record from which a trier of fact could infer" the "arises proximately" requirement. *Id.* Although the court discussed the "arises naturally" requirement, it neither stated that the requirement must be established by expert medical testimony nor focused on whether that requirement was satisfied. Instead, the court concluded merely that there was sufficient evidence to support the inference that the disabling wrist condition "arose naturally and proximately" out of employment. *Id.* at 483. *Dennis* therefore does not support Weyerhaeuser's argument. Had the court intended to require expert medical testimony for the "arises naturally" requirement, it could have stated so explicitly.

In *Potter v. Department of Labor & Industries*, 172 Wn. App. 301, 304, 306-07, 289 P.3d 727 (2012), a lawyer filed an occupational disease claim after noticing strong odors in her newly remodeled office, experiencing bloody noses and fatigue, and being diagnosed with multiple chemical sensitivity disorder. The court found the lawyer failed to satisfy the "arises proximately" requirement because the medical testimony established only a possibility, not a probability, that she was exposed to chemicals in the remodeled office that made her sick. *Id.* at 311. The court similarly found that the lawyer failed to satisfy the "arises naturally" requirement because, as the Board had found below, "'[r]emodels are everywhere, and by no means limited to law offices, or to work for that matter.'" *Id.* at 316. The court therefore upheld the denial of benefits. *Id.* at 304. Nowhere in *Potter* did the court state it was upholding the denial of benefits because the lawyer failed to present medical testimony that remodels were a distinctive condition of her employment. To the contrary, the decision suggests that medical testimony is not necessary to make such a showing, as the Board made that determination on its own.

In *Gast v. Department of Labor & Industries*, 70 Wn. App. 239, 241, 852 P.2d 319 (1993), a maintenance worker filed an occupational disease claim for a stress-related disease allegedly caused by being the subject of workplace rumors. On appeal, she challenged the trial court's jury instruction, which read:

> "If you find that Vickie Gast suffered a disease which was proximately caused by occurrences in her workplace, then you must consider whether or not such occurrences are distinctive conditions of her particular employment. This court has already ruled, as a matter of law, as follows:
>
> "(1) Rumors . . . by one's co-workers, are not, by themselves, distinctive conditions of employment."

*Id.* at 242. The appeals court affirmed the denial of benefits and held that the trial court "correctly determined as a matter of law that rumors . . . are not distinctive conditions of employment." *Id.* at 243. "Such conditions are unfortunate occurrences in everyday life or all employments in general. Their occurrence at a specific workplace is coincidental." *Id.* As in *Potter*, 172 Wn. App. at 316, where the Board determined on its own that the lawyer's conditions of employment were not distinctive, the lower court in *Gast* found on its own that the maintenance worker's conditions of employment were not distinctive, 70 Wn. App. at 243. This suggests that expert medical testimony is not necessary to satisfy the "arises naturally" requirement.

As in *Gast*, *id.* at 243-44, where the court held that rumors were not distinctive conditions of employment, the crux of the reasoning in *Witherspoon v. Department of Labor & Industries*, 72 Wn. App. 847, 851, 866 P.2d 78 (1994), was that a coughing incident was merely coincidental with employment and could have happened anywhere. In *Witherspoon*, *id.* at 848-49, a slaughterhouse worker filed an occupational disease claim for meningitis he allegedly contracted from a

coworker who had coughed in his face in the locker room. In reversing the jury's award of benefits, the appeals court stated the "meningitis did not come about" naturally because "the medical testimony was that meningitis is spread" through the mouth and nose, and occurs almost everywhere. *Id.* at 851. The worker's exposure to meningitis in the workplace "was merely coincidental and not a result of any distinctive conditions of his employment." *Id.* Although the court relied on medical testimony to find the worker did not satisfy the "arises naturally" requirement, nowhere in the decision did the court say that such testimony is necessary. We do not read the decision as requiring expert medical testimony.

Similarly, in *Wheeler v. Catholic Archdiocese of Seattle*, 65 Wn. App. 552, 567, 829 P.2d 196 (1992), *rev'd in part on other grounds*, 124 Wn.2d 634, 642-43, 880 P.2d 29 (1994), the court focused on the coincidental nature of the employment conditions. There, a worker filed a negligent supervision claim against her employer, which argued the claim should have been dismissed under the IIA's exclusive remedy provision. *Id.* at 565. On appeal, the court found the trial court did not err in refusing to dismiss the negligent supervision claim because it did not fall within the basic coverage of the IIA. *Id.* at 566, 568. The worker's claim was for a mental disability allegedly resulting from her supervisor's harassment. *Id.* at 566. Without mentioning any medical testimony, the court found that "[t]he

-21-

conditions . . . were not particular to her occupation, but only coincidentally occurred in her workplace." *Id.* at 567-68. *Wheeler* thus does not suggest that the "arises naturally" requirement must be established by medical testimony.

As these cases illustrate, Washington case law does not support Weyerhaeuser's argument that a worker must prove the "arises naturally" requirement through expert medical testimony. *See also Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 7-8, 977 P.2d 570 (1999) (affirming the denial of benefits without reaching the "arises naturally" requirement because the medical testimony did not support the "arises proximately" requirement); *Shreeve*, 55 Wn. App. at 335-36 (upholding the award of benefits in part because the worker "presented the testimony of three doctors to support her contention that her kidney disease arose *'proximately'* out of her employment," but not stating whether such testimony supported the requirement that the disease arose "naturally" out of employment (emphasis added)); *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 387, 393, 828 P.2d 1138 (1992) (rejecting the worker's occupational disease claim because he conceded that "his job was not unusually stressful" and the evidence therefore showed his depression was "caused simply by his own subjective but unrealistic view of the situation at" work rather than distinctive conditions of his employment). Rather, the remedial purpose of the IIA, the standard governing the admissibility of

expert testimony, and the cases all indicate expert medical testimony is not required to prove a condition arises naturally out of employment.

II.    The Evidence Was Sufficient To Support the Jury's Finding That Street's Chronic Low Back Condition "Arose Naturally and Proximately" Out of Distinctive Conditions of His Employment

The remaining issue is whether sufficient evidence supported the jury's verdict that Street's low back condition is an occupational disease. At the superior court, the "party attacking the [Board's] decision" has the burden of proving it is not "prima facie correct." *Ruse*, 138 Wn.2d at 5; RCW 51.52.115. At the appellate court, however, "'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the [superior] court's conclusions of law flow from the findings.'" *Ruse*, 138 Wn.2d at 5 (quoting *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996)). Substantial evidence exists if it "convince[s] an unprejudiced, thinking mind of the truth of that to which the evidence is directed." *Ehman v. Dep't of Labor & Indus.*, 33 Wn.2d 584, 597, 206 P.2d 787 (1949). The appellate court views the evidence "in the light most favorable" to the party who prevailed at the superior court. *Bennett*, 95 Wn.2d at 534.

As noted, to succeed on an occupational disease claim, a worker must prove that the disease "arose naturally and proximately" out of employment. *See Dennis*, 109 Wn.2d at 481-82. The "arises proximately" requirement "must be established by competent medical testimony which shows that the disease is probably, as opposed to possibly, caused by the employment." *Id.* at 477. "If, from the facts and circumstances and the medical testimony given, a reasonable person can infer that the causal connection exists, the evidence is sufficient." *Bennett*, 95 Wn.2d at 533. In reviewing the medical testimony on this issue, the "long-standing rule of law in workers' compensation cases [is] that special consideration should be given to the opinion of a [worker's] attending physician." *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). As established above, the "arises naturally" requirement need not be established by medical testimony. Rather, lay testimony may establish that the "occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of" employment. *Dennis*, 109 Wn.2d at 481.

Weyerhaeuser contends that Street's occupational disease claim fails because he "presented *no expert testimony* that addressed, directly or indirectly, the question whether his work activities were distinctive, compared to other employments and the activities of daily living." Br. of Appellant at 21. Weyerhaeuser emphasizes that

neither Dr. Peterson nor Dr. Tsirulnikov compared Street's work activities to activities of daily living, and Dr. Rosenbaum testified that Street's work conditions were not distinctive. *Id.* Street counters that Dr. Peterson's testimony was sufficient to prove that his low back condition "arose naturally and proximately" out of distinctive conditions of his employment because Dr. Peterson accurately described Street's work duties and opined that Street's employment more probably than not caused his low back condition. Suppl. Br. of Resp't at 7-9.

While the evidentiary question presents a close call, we uphold the jury's verdict. Viewing the evidence in the light most favorable to Street and giving special consideration to Dr. Peterson's testimony, we hold there was sufficient evidence to support the jury's finding that Street's low back condition is an occupational disease.

Dr. Peterson's testimony and Dr. Tsirulnikov's testimony were sufficient to establish that Street's low back condition "arose proximately" out of his employment. Dr. Peterson testified that Street's work more probably than not caused his low back condition, as opposed to everyday wear and tear. CP at 322-23, 326. Similarly, Dr. Tsirulnikov testified that Street's work more probably than not contributed to his low back condition, but he could not say to what extent. *Id.* at 367-68, 371. Although Dr. Rosenbaum testified that Street's work did not proximately cause his low back condition, *id.* at 411, the evidence must be viewed

in the light most favorable to Street and need only reasonably suggest a causal connection. *See Bennett*, 95 Wn.2d at 533-34. Nor was the jury obligated to credit Dr. Rosenbaum's opinion. From the evidence, a rational trier of fact could infer the required causal connection between Street's employment and his low back condition.

Street's testimony and his supervisor's testimony were sufficient to establish that Street's low back condition "arose naturally" out of distinctive conditions of his employment. Both Street and his supervisor testified that Street's duties included manhandling paper rolls that weighed on average 1,000 pounds. CP at 236-37, 261, 288, 300-01. Street further testified that the paper machines he worked on are the world's biggest and fastest paper machines. *Id.* at 230. "The weight of . . . testimony is for the jury." *Bennett*, 95 Wn.2d at 534. A jury could conclude that manhandling paper rolls on the world's biggest and fastest machines was a distinctive condition of employment, as it does not occur in everyday life nor in all employments. Although we hold expert medical testimony is not required to establish Street's distinctive conditions of employment, Dr. Peterson's testimony is also helpful in resolving this issue. Dr. Peterson testified that Street used "a lot of his body weight" and his "abdominal muscles" in his employment, and she compared Street's job to her sedentary job. CP at 322-23. She testified that "people who use the body parts

that are required in their job tend to wear those parts out." *Id.* at 323. From this testimony, a jury could conclude that Street's job required more physical rigor than everyday life and work in general.

Considering all the testimony, we hold that substantial evidence supported the jury's finding that Street's low back condition is an occupational disease.

### III. Street Is Entitled to Attorney Fees on Appeal

Street requests attorney fees on appeal. Both the superior court and the Court of Appeals awarded Street attorney fees pursuant to RCW 51.52.130. CP at 535; *Street*, slip op. at 13. That provision states,

> If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker . . . or in cases where a party other than the worker . . . is the appealing party and the worker's . . . right to relief is sustained, a reasonable fee for the services of the worker's . . . attorney shall be fixed by the court.

RCW 51.52.130(1).

Because we affirm the lower courts' determination that Street's low back condition is an occupational disease, Street's right to relief is sustained on Weyerhaeuser's appeal and he is entitled to attorney fees.

## CONCLUSION

We affirm the Court of Appeals. The remedial nature of the IIA, the standard governing the use of expert testimony, and our precedent all support the conclusion

that a worker seeking industrial insurance benefits need not present expert medical testimony to satisfy the "arises naturally" requirement of an occupational disease claim. A worker need only present expert medical testimony to satisfy the "arises proximately" requirement. Given that Street's attending physician testified that his low back condition was more probably than not caused by his work, and given that Street and his supervisor testified as to Street's duties working in the paper mill, substantial evidence supported the jury's finding that Street's low back condition constitutes an occupational disease.

_____
Stephens, J.

WE CONCUR:


_____
Fairhurst, C.J.

_____
J. Johnson, J.

_____
Madsen, J.

_____
Owens, J.


_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.